553 A.2d 114

Adrian C. Eckert et al. *v.* Thomas Pierotti et al. Commonwealth of Pennsylvania, Department of Environmental Resources, Appellant.

Adrian C. Eckert et al. *v.* Thomas Pierotti et al. Thomas Pierotti, Hugh A. Rich, and Neil Nearing, Individually and as Supervisors for Hamilton Township, and Hamilton Township, McKean County, Pennsylvania, Appellants.

Argued October 31, 1988, before Judges DOYLE and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Dennis Luttenauer*, for appellants, Thomas Pierotti, et al.

*Gary A. Peters*, Assistant Counsel, for appellant, Department of Environmental Resources.

*David W. Swanson, Swanson, Bevevino and Millin, P.C.*, for appellees.

OPINION BY JUDGE DOYLE, January 20, 1989:

This is an appeal by permission, pursuant to Pa. R.A.P. 1311(b) and Section 702(b) of the Judicial Code, 42 Pa. C. S. §702(b), from an interlocutory order of the court of Common Pleas of McKean County which denied Defendant-Petitioner Hamilton Township's (Township) and Intervenor-Petitioner Department of Environmental Resources' (DER) motion for judgment on the pleadings. We reverse.

The genesis of this matter originated with a letter dated January 3, 1985, from DER to the Township offi-

cially notifying the Township of the "need and requirement to update the Official Sewage Plan for the Village of Ludlow" within 120 days, pursuant to Section 5 of the Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §750.5, known as the Pennsylvania Sewage Facilities Act[1] (Act 537). By resolution adopted February 5, 1985, the Township authorized the engineering firm of Edwards & Moncreiff to revise its Act 537 Official Sewage Plan. The Township then adopted the revised plan by resolution on June 17, 1986 and, as required by Act 537, submitted it to DER for approval. DER, by notice dated September 12, 1986, notified the Township that it had completed its review and that the revised sewage plan for the Village of Ludlow was approved. The notice further stated that DER would "hold Hamilton Township responsible for the timely implementation of the sewage disposal program as described in the said plan."

Thereafter, on March 11, 1987, pursuant to the federal Clean Water Act of 1977,[2] and the Pennsylvania Clean Streams Law,[3] DER issued to the Township a National Pollutant Discharge Elimination System Water Quality Management Part I sewage permit (NPDES permit) which authorized the Township to discharge treated wastes from a facility located therein to receiving waters known as Two Mile Run, in accordance with effluent limitations, monitoring requirements and other conditions set forth in the permit. Both the Township's application for the permit, and DER's issuance thereof, were advertised in the Pennsylvania Bulletin respectively at 17 Pa. B. 424, 431 (January 24, 1987) and 17 Pa. B. 1327 (March 28, 1987).

---

[1] 35 P.S. §750.1 through 750.20.

[2] 33 U.S.C. §§1251 through 1376.

[3] The Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§691.1 through 691.1001.

Subsequently, by resolution dated June 23, 1987, the Township authorized the submission to DER of an application for a Water Quality Management Part II permit. This permit, pursuant to Section 207 of the Clean Streams Act, 35 P.S. §691.207, allowed the Township to construct and operate a waste water collection system and treatment facility as described in the revised Act 537 Official Sewage Plan for the Village of Ludlow. The resolution further authorized the Township to proceed with the construction and operation of the system and facility upon approval of the application for, and the issuance of, the permit. The Township caused the resolution to be advertised in the *Kane Republican*, a newspaper of general circulation in McKean County, for three successive weeks beginning June 29, 1987. The advertisement stated, *inter alia*, that DER, by notice dated September 12, 1986, had approved the revised Act 537 plan for the Village of Ludlow.

This advertisement did not go unnoticed because on or about July 16, 1987, a written protest against the construction of the proposed system and facility was filed in the McKean County Prothonotary's office. The protest was filed pursuant to Section 1502 of the Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §66502, and was signed by persons (Plaintiffs) purporting to constitute at least sixty percent of the total property owners affected by the proposed system.

DER subsequently issued to the Township, on November 13, 1987, a Water Quality Management Part II permit, authorizing the construction of the sewer system and facility as described in the plans and specifications submitted by Edwards & Moncreiff, which was duly recorded in McKean County on November 25, 1987. Both the Township's application for, and DER's issuance of, the Part II permit were published in the Pennsylvania Bulletin respectively at 17 Pa. B. 2832, 2833 (1987) and

17 Pa. B. 5077, 5079 (1987). Said notices advised all interested parties that DER's actions could be appealed to the Environmental Hearing Board within thirty days of the publication date of that notice of action.

Plaintiffs commenced this litigation by filing an action in the nature of a complaint for declaratory and injunctive relief against the Township and its supervisors, in their individual and official capacities, on November 16, 1987 in the Court of Common Pleas of McKean County. Plaintiffs are individuals and a sportsmens club who own property in Ludlow, an unincorporated village in Hamilton Township, McKean County. The complaint sought, *inter alia*, a declaration that the proposed construction by the Township of a waste water collection system and treatment facility for the Village of Ludlow was unlawful, and that it was prohibited by virtue of the filing by Plaintiffs of a protest pursuant to Section 1502 of the Code. The Township responded on December 4, 1987 by filing a counterclaim for declaratory judgment. Therein, the Township sought, *inter alia*, a declaration that Section 1502 of the Code, insofar as it would be construed to prohibit implementation by the Township of its approved sewage plan, is inconsistent with Act 537 and has been repealed by Section 19 of that Act, 35 P.S. §750.19.

DER petitioned successfully to intervene on January 9, 1988. Therein, DER asserted that it fully intended to ensure that the Township implement its official plan as adopted, and that as the agency charged with the responsibility for enforcing the Commonwealth's environmental laws, it had a significant interest in the continued validity of Act 537 and the Clean Streams Law as applied to Hamilton Township and all other second class townships in the Commonwealth.

Thereafter, on March 25, 1988, the Township, joined by DER, filed a motion for judgment on the pleadings. After hearing oral argument, the common pleas court, by

order dated May 5, 1988, denied the motion. The Court held that Section 1502 of the Second Class Township Code was not inconsistent with Act 537 and was thus not repealed by that Act's repealer clause. On June 10, 1988, the Township and DER moved that the court amend its order to include a statement certifying that its order was appropriate for an interlocutory appeal. The court so amended its order on June 23, 1988. The Township and DER then petitioned this Court for permission to Appeal.[4] We granted those petitions and the cases were consolidated.

The Township, on appeal, presents two issues for our consideration. We will first address the issue of whether Section 1502 of the Second Class Township Code is inconsistent with, and has therefore been repealed by, Act 537 — the Pennsylvania Sewage Facilities Act.

Section 3 of Act 537, 35 P.S. §750.3, declares that it is the policy of the Commonwealth, *inter alia*, to protect the public health, safety and welfare of its citizens through the development and implementation of plans for the sanitary disposal of sewage waste; to prevent and eliminate pollution of the waters of the Commonwealth by coordinating planning for the sanitary disposal of sewage wastes with a comprehensive program of water quality management, and, to ensure the rights of citizens on matters of sewage disposal as they may relate to Act 537 and the Pennsylvania Constitution.[5] Pursuant to this policy, Section 5(a) of Act 537, 35 P.S. §750.5(a) mandates that "[e]ach municipality shall submit to the Department an officially adopted plan for sewage services for areas within its jurisdiction within such reasonable period as

_____

[4] The Township filed its petition at 456 M.D. No. 4; DER filed its petition at 455 M.D. No. 4

[5] *See also* Section 4 of the Clean Streams Law, 35 P.S. §691.4, which declares the policy of the Commonwealth to be *inter alia,* prevention of further pollution of the waters of the Commonwealth.

the department may prescribe, and shall from time to time submit revisions of such plan as may be required. . . . " The plan required by Section 5(a) is the Act 537 official plan.[6]

This Court has previously held, with regard to such plans, that:

> [T]he Sewage Facilities Act is mandatory on all municipalities, requiring each municipality of the Commonwealth to submit a comprehensive plan for the development of present and future sewage treatment facilities.

> The declaration of policy in Section 3 . . . indicates that mandatory municipal planning, as opposed to contemporaneous or ad hoc reactions to changing circumstances, is necessary to accomplish the stated goals. . . .

*Carroll Township v. Department of Environmental Resources*, 48 Pa. Commonwealth Ct. 590, 596-97, 409 A.2d 1378, 1380-81 (1980). Further, Section 10 of Act 537, 35 P.S. §750.10, provides that DER shall have the power and its duty shall be the following:

> (1) To order municipalities to submit official plans and revisions thereto. . . .

> (2) To approve or disapprove official plans and revisions thereto. . . .

> (3) To order the implementation of official plans and revisions thereto. . . .

Both the Township and DER argue that the comprehensive nature of Act 537 provides clear guidance as to the intent of the General Assembly in adopting the Act. They contend that the Commonwealth's environmental policy, as expressed by the General Assembly, is to prevent and abate sewage-caused water pollution through strict

---

[6] The required contents of official plans are delineated by Section 5(d) of Act 537, 35 P.S. §750.5(d).

planning and the issuance of permits, and that Act 537, together with the Clean Streams Law and their concomitant rules and regulations, provide the comprehensive and exclusive method for regulating sewage disposal within the Commonwealth. As such, they claim that Section 1502 of the Code has been repealed as inconsistent with Act 537 by Section 19 of that Act. Section 19 of Act 537 was added by Section 9 of the Act of July 22, 1974, P.L. 621. It provides that "[a]ll acts or parts thereof inconsistent with the provisions of this Act are repealed."

Section 1502 of the Second Class Township Code states:

> No sewer, drain or system thereof shall be constructed under the provisions of this article unless a resolution or ordinance of the Board of Supervisors authorizing the same shall be published in a newspaper of general circulation published in the county in which the township is situated, once a week for three successive weeks. *If, before the expiration of twenty days after the last publication, sixty per centum of the total property owners of the township or the affected sewer district, if such district has been constituted, as the case may be, shall sign and file, in the office of the Prothonotary of the court of common pleas of the county in which the township is located, a written protest against the construction of such sewer, drain or system thereof, then the construction authorized by such resolution or ordinance shall not be undertaken or proceeded with.* (Emphasis added.)

The McKean County Court of Common Pleas concluded that Section 1502 of the Code was not inconsistent with Act 537. Plaintiffs argue that the trial court's conclusion was correct and that Section 1502 can exist concur-

rently with, and is not repugnant to or inconsistent with, Act 537.

We do not agree. The plain language of Section 1502 provides an absolute bar to the Township's construction of a sewer system if sixty percent of Township property owners file a protest. The Section fails to provide the Township with an alternative course of action or remedy enabling it to abate existing pollution. It provides, merely, that "construction . . . shall not be undertaken or proceeded with."

Section 1921(a) of the Statutory Construction Act, 1 Pa. C. S. §1921(a), provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." As we have previously noted herein, the General Assembly, through its enactment of Act 537, clearly intended to provide for a comprehensive program of water quality management and for the prevention and elimination of sewage-caused pollution. Act 537 provides that the intent be accomplished through planning and prompt implementation of that plan by each municipality. Section 1502 of the Code is inconsistent with the intended comprehensive scope of Act 537 because it literally allows sixty percent of the citizens of a second class township to permit existing pollution to go unabated merely by filing a protest with the prothonotary. We hold therefore that Section 1502 of the Second Class Township Code is repealed insofar as it is inconsistent with Act 537.[7]

---

[7] Plaintiffs also contend herein that Section 1502 and Act 537 are reconcilable because they are both concerned with protecting the rights of affected citizens to voice concerns about the construction project. This Court has previously held, in *Stewart v. Zoning Hearing Board of Radnor Township*, 110 Pa. Commonwealth Ct. 111, 531 A.2d 1180 (1987), that the enactment of Act 537 resulted in a limited preemption by DER in the field of sewage operations. Therein, we concluded that because a proposed sewage system treatment plant was a DER accepted method of waste management, the zoning

The second issue before us is whether the agreement for engineering services between the Township and Edwards & Moncreiff is void and of no effect because (1) there was no formal, prior action by the Township authorizing the agreement, and (2) because the protest filed pursuant to Section 1502 of the Code rendered the agreement null and void. The common pleas court ruled that it could not grant the Township's and DER's motion for judgment on the pleadings on this issue because of unresolved factual questions.

The pleadings in this matter disclose the following admitted facts. First, the official minutes of the Township's regular monthly meeting held June 3, 1986 show that Edwards & Moncreiff was accepted as the engineering firm for the sewage project. There is no indication, however, of a formal vote or resolution to that effect. Second, on October 30, 1986, an agreement for engineering services was entered into on behalf of the Township by Hugh A. Rich, Jr., a duly-elected supervisor. Third, on or about July 16, 1987, a protest against the construction of the proposed system was filed by Plaintiffs. Fourth, on December 1, 1987, the Township by motion formally approved and ratified the agreement as well as

---

hearing board did not have jurisdiction to make findings as to whether the system was a proper selection, "even though the board may be convinced that an approval might have been improvidently granted." *Id.* at 116, 531 A.2d at 1183, (quoting *Appeal of Klock,* 51 Pa. Commonwealth Ct. 641, 646, 415 A.2d 705, 707 (1980)). Therefore, because we have already found that certain aspects of sewage waste regulation by a municipality have been preempted by Act 537, we find Plaintiff's argument that Act 537 and regulations found within a township code are consistent simply because both protect the rights of citizens to be unpersuasive. *Cf., Carroll Township v. Department of Environmental Resources,* 48 Pa. Commonwealth Ct. 590, 409 A.2d 1378 (1980) (review procedures under Clean Streams Law not alternative remedy to Act 537; Act 537 is mandatory as to all municipalities).

all expenditures and obligations that the Township made in reliance thereupon and pursuant thereto. The record also indicates that Edwards & Moncreiff performed services pursuant to the agreement (preparation and submission of plans and permit applications), and there is no indication that the Township disaffirmed or disavowed the agreement or any part of the agreement.

It is well settled that a municipal corporation may ratify contracts which are within its corporate powers and made by its officers without authority, or in excess of their authority. In other words, the municipal corporation may waive the irregularity of a municipal contract and ratify that contract:

> It is a general rule that whatever acts public officials may do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority. [Footnote omitted.] Consequently, it is well settled that contracts which are within the scope of the corporate powers but not authorized by proper action of the municipal corporation, that is, contracts not ultra vires, may be ratified by the proper corporate authorities.

10 McQuillen §29.104 (3rd ed.). Moreover, "[t]he ratification of a contract by the municipal corporation may be made by the affirmative action of the proper officials, or by any action or nonaction which in the circumstances amounts to an approval of the contract." *Id.*, §29.106 (footnotes omitted). This concept has been recognized by this Court in *Township of Connoquenessing v. Township of Butler,* 88 Pa. Commonwealth Ct. 530, 491 A.2d 288 (1985) wherein we said that the irregular exercise of basic power under a legislative grant is *ultra vires* only in a secondary sense and does not preclude ratification.

Plaintiffs do not contend that the Township lacked the authority to enter into the agreement at issue. That authority is granted by, *inter alia*, Section 801 of the Code, 53 P.S. §65801, regarding the power to make contracts, Section 802(a), 53 P.S. §65802(a), regarding the power to make, authorize and ratify expenditures, and Section 802(e)(5), 53 P.S. §65802(e)(5), regarding the exemption of professional services contracts from the advertising and bidding requirements, respectively. Accordingly, we hold that the Township, having had the power to enter into the contract, also had the power to ratify it. Therefore, the agreement is to be given its full effect.

Plaintiffs also contend that all services, payments, and obligations pursuant to the agreement performed or made after the filing of Plaintiffs' protest under Section 1502 of the code were unlawful and unauthorized. However, because we hold that Section 1502 of the Code was repealed insofar as it is inconsistent with Act 537, Plaintiffs' argument in this regard necessarily fails. Accordingly, the Township and DER are therefore entitled to judgment on the pleadings and the trial court's order is reversed.

ORDER

NOW, January 20, 1989, the order of the Court of Common Pleas of McKean County in the above-captioned matter is reversed, and this matter is remanded to that court for the entry of judgment on the pleadings in favor of defendants on all issues.

Jurisdiction relinquished.