McCARL'S, INC.

v.

**BEAVER FALLS MUNICIPAL AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 2004.

Decided April 15, 2004.

J. Philip Colavincenzo, Beaver, for appellant.

Thomas G. Michalek, Pittsburgh, for appellee.

BEFORE: LEADBETTER, J., and KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Beaver Falls Municipal Authority (Authority) appeals from the decision of the Court of Common Pleas of Beaver County (trial court) which denied the Authority's motion for summary judgment and granted the motion for summary judgment filed on behalf of McCarl's Inc. (McCarl's). The trial court found in favor of McCarl's and against the Authority in the amount of $24,078.02 plus interest on the outstanding balance due at the rate of one percent per month, plus penalty of one percent per month, plus reasonable attorney fees as provided by the Contractor and Subcontractor Payment Act, Act of February 17, 1994, P.L. 73, as amended, 73 P.S. §§ 501–515, calculated from December 6, 2000, the time in which the Authority certified that McCarl's had completed 100% of the work it was required to do. The trial court then granted leave to McCarl's to submit evidence to the court per its claim for attor-

ney fees. We reverse and this matter is remanded to the trial court for referral of the matter to arbitration in accordance with the contract.

On October 22, 1998, the Authority awarded McCarl's one of three contracts (Contract) for a sludge handling facility at the Authority's water treatment plant in Eastvale, Beaver County. McCarl's was awarded the job for a total price of $284,000.00. The Contract contains an exclusive arbitration provision and requires the parties to subject all their claims regarding this Contract to arbitration.

By the summer of 2000, McCarl's had performed, requested and been awarded payment on the mechanical contract for about ninety (90%) percent of the required work. At this time a dispute arose between McCarl's and the Authority over the scope of the work in McCarl's Contract and the responsibility of McCarl's to integrate its work with those of the other contractors. The Authority withheld payment numbers 15–18, disputing McCarl's entitlement to those payments because of its refusal to do the coordination and to supply the operations manual. The parties did not arbitrate the disputes. The Authority hired SAI Associates (SAI) as the construction engineer to oversee the sludge project. SAI attempted to resolve the matter and the parties negotiated an agreement (Agreement). The Agreement was memorialized in a letter from the Authority's project manager and agent, Kevin Lettrich. The letter directed the parties to address any questions or concerns regarding the proposed Agreement to Mr. Riggio. Both Mr. Riggio and Mr. Lettrich testified that neither party expressed any questions or concerns following issuance of the letter Agreement.

The letter Agreement states in pertinent part as follows:

RE: Beaver Falls Municipal Authority

Eastvale Water Treatment Plant

Sludge Handling Facility

Contract No. S–3 Mechanical Construction

Project Completion Agreement

. . .

The following is a recap of the agreement between Beaver Falls Municipal Authority and McCarl's, Inc:

1. The Beaver Falls Municipal Authority will pay McCarl's $9,262.50 of their contract amount as soon as the agreement is signed by both parties.

The Authority will forgive any liquidated damages.

The Authority will still hold a 2.5% retainer ($2,439.86) and the balance of McCarl's contract of $5,479.85 will be paid under next month's estimate. This should complete McCarl's contracted amount of $297,594.23 (including Changes Order Nos. 1 and 2).

2. Upon completion of all outstanding issues including the operators for the primary basin valves, the Beaver Falls Municipal Authority will pay a net change order in the amount of $15,000.00 ($15,000 for the effluent pump panel, $5,000 for the SO2 line installation, and a credit of $5,000 for the effluent pump hoist.) This change order will cover all known costs associated with making the project complete and operational.

3. The scheduling of start-up and testing of equipment will work in conjunction with an anticipated completion of two weeks. All equipment manufacturers will be informed immediately that the site should be ready in two weeks, so that there is no lag time between completion and start-up.

4. This agreement is to be confidential between Beaver Falls Municipal Authority and McCarl's.

I hope this completely and adequately describes the proposed agreement. If you have any questions or concerns, please address them to Mr. Jim Riggio at. . . .

Letter agreement, October 19, 2000 at 1.

After the letter was delivered, the Authority made three separate payments in accordance with the terms of the letter. Lettrich certified to the Authority that McCarl's had completed 100% of all work required on the project. The Authority failed and refused to pay the remaining balance owed under the Agreement stating that McCarl's had not fully integrated the systems as it was required to do. Nine days after the letter Agreement, the Authority entered into a contract with one of McCarl's sub contractors for integration of the system. The Authority never requested that McCarl's perform any further work on the project after the letter Agreement, nor did it dispute the work McCarl's had done. The coordination problem was known before the October letter Agreement. On August 13, 2001, McCarl's filed a complaint for the $24,000.00 owed under the Agreement with the trial court.

On September 4, 2001, the Authority filed preliminary objections seeking to dismiss McCarl's complaint and require the parties to arbitrate the dispute pursuant to the arbitration clause in the original Contract. On January 2, 2002, the trial court dismissed the Authority's preliminary objections as McCarl's was not suing under the original Contract but on the settlement Agreement. The trial court further found that factual issues existed as to the extent to which the Agreement affected the parties' obligations under the original Contract.

The Authority then filed an answer, new matter and counterclaim to McCarl's complaint, once again asserting that the matters raised in McCarl's complaint were subject to the arbitration provisions of the original Contract.

McCarl's filed preliminary objections to the Authority's new matter and counterclaim, alleging that the issues raised should be stricken as they were settled by the Agreement and the issue had been resolved by the trial court's order of January 2, 2002. The trial court dismissed McCarl's preliminary objections.

After discovery, both parties filed motions for summary judgment. McCarl's asserted that all issues were resolved in the letter Agreement and that therefore, there was no genuine issue of material fact. McCarl's asked for the money still owed under the Agreement, plus interest. The Authority asserted that the letter Agreement was not an independent Agreement but merely implemented and completed the original Contract. The Authority asked that the complaint be dismissed and arbitration ordered pursuant to the Contract.

On May 20, 2003, the parties argued before the trial court and on June 18, 2003 the trial court denied the Authority's motion for summary judgment and granted McCarl's motion for summary judgment awarding it the $24,000.00 and attorney's fees to be determined at a later date. On July 15, 2003, the Authority appealed to our Court.

The Authority contends that the trial court erred in denying the Authority's motion for summary judgment and thereby concluding that the Agreement of October 19, 2000 was not a part of the original October 1998 Contract between the parties or in granting summary judgment for McCarl's or in granting McCarl's leave for attorney's fees per Section 12 of the Contractor's and Subcontractor's Payment Act, 73 P.S. § 512.

■ The Commonwealth favors the settlement of disputes by arbitration to promote the swift and orderly disposition of those claims. *Huegel v. Mifflin Construction Company, Inc.*, 796 A.2d 350 (Pa.Super.2002). The Contract states in pertinent part as follows:

> All claims, disputes and other matters in question arising out of, or relating to, this contract or the breach thereof except for claims which have been waived by final payment in accordance with Section 46, shall be decided by arbitration. This Agreement to arbitrate shall be specifically enforceable.

Section 00700 Project Manual, General Conditions at 24. "Where ... there is an unlimited arbitration clause, any dispute which may arise between the parties concerning the principal contract is to be settled pursuant to its terms." *Borough of Ambridge Water Auth. v. Columbia*, 458 Pa. 546, 551–552, 328 A.2d 498, 501 (1974).

The Contract states in Article 1, Contract Documents as follows:

> The Contract Documents consist of this Agreement, Contract Forms, Conditions of the Contract, Contract Drawings, Technical Specifications, all Addenda issued prior to execution of this Agreement and all Modifications issued subsequent thereto. These forms, the Contract and all are as fully a part of the Contract as if attached to this Agreement or repeated herein.

The Agreement was prepared by SAI and is referenced as the "Beaver Falls Municipal Authority Eastvale Water Treatment Plant Sludge Handling Facility Contract No. S–3 Mechanical Construction Project Completion Agreement." Agreement at 1. The Agreement does not contain any reference to the handling of disputes, arbitration, or the method of payment.

■ In order to successfully substitute one contract for another, one must show "the displacement and extinction of a valid contract, the substitution for it of a valid new contract, ... and the consent of the parties...." *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 478 A.2d 484, 486 (1984). The party asserting a novation or substituted contract has the burden of proving the parties intended to discharge the earlier contract. *Id.* "Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Neville v. Scott*, 182 Pa.Super. 448, 127 A.2d 755 (1957).

■ In the present controversy, the record contains no clear evidence of the parties' intention to supplant the earlier agreement. In fact, the Contract states in the first Article that all modifications issued subsequent to the contract are to be considered part of the contract.

Additionally, forty days after the date of the Agreement, McCarl's continued to seek payment in the manner it had prior to the Agreement. McCarl's application for payment number 17 dated November 28, 2000 and seeking $16,221.21 references the S–3 Mechanical Contract, not the letter Agreement of October 19, 2000, the amount of the Contract completed, the amount subject to change orders and requests of payment based on the numbers yet to be paid by change order and from the original Contract.

■ The letter Agreement does dispose of some issues between the parties. The letter Agreement, however, stems from a part of the original Contract. The letter Agreement refers to the original Contract and the payments are a part of the original Contract. When, therefore, a further dispute arises over the issues sup-

posedly settled by a post-contract agreement the resolution of those issues is still governed by the terms of the original Contract until those terms are rejected. The mere clarification of obligations and changes in amounts does not alter the fact that there was an original Contract that specified the forum where a dispute would be settled. The use of an arbitration clause to establish a forum for dispute resolution outside the court system is favored by the law and once employed, will not be later deleted from the contract unless expressly rejected in a later agreement. The Supreme Court has stated:

> Settlements of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.... An order enjoining arbitration of a particular grievance should not be granted unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute. (Citations Omitted).

*Lincoln University of Commonwealth System of Higher Education v. Lincoln University Chapter of American Association Of University Professors,* 467 Pa. 112, 119, 123, 354 A.2d 576, 580, 581–82 (1976).

The fact that the issue of arbitration was not discussed in the letter Agreement leads to the conclusion that the letter Agreement was merely a settlement of other issues between the parties and not a novation, i.e., a new Contract entirely. When the original Contract contains an arbitration clause, parties are encouraged to have settlement Agreements when disputes arise but in order to cancel the arbitration provision of the original contract, the settlement agreement must expressly cancel or otherwise nullify that Agreement, arbitration provision or original Contract between the two parties.[1]

Accordingly, we reverse and this matter is remanded to the trial court for referral of the matter to arbitration in accordance with the contract.

### ORDER

AND NOW, this 15th day of April, 2004 the order of the Court of Common Pleas of Beaver County in the above captioned matter is reversed and this matter is remanded to the trial court for referral of the matter to arbitration in accordance with the contract.

Jurisdiction relinquished.

---

1. As the dispute is subject to the arbitration clause in the original contract, there is no need to address the remaining issues.