## CITY OF SCRANTON

v.

## HEFFLER, RADETICH & SAITTA, LLP and Solutions for Management, Inc., Appellants.

Commonwealth Court of Pennsylvania.

Argued March 3, 2005.

Decided April 4, 2005.

Anthony J. Bolognese, Philadelphia for appellants.

Carl J. Greco, Scranton, for appellee.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, (P.), McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Heffler, Radetich & Saitta, LLP and Solutions for Management, Inc. (hereafter Appellants) appeal from an order of the Court of Common Pleas of Lackawanna County (trial court), denying their motion for summary judgment and providing that Appellants and the City of Scranton (the City) shall not proceed with arbitration before the American Arbitration Association. We now affirm.

On September 4, 2001, James P. Connors, then Mayor of the City, signed an agreement with Appellants, engaging them to perform an analysis/audit of the insurance claims paid by the City through its medical insurance carrier, Blue Cross, over the past five years. This agreement was entitled "City of Scranton Term Sheet Insurance Engagement" and had been previously executed by officials from Appellants' respective businesses.[1] The purpose of this agreement was to identify any medical claims processed and paid through the City's Blue Cross coverage that should have been paid by other insurance carriers, such as workers' compensation carriers or automobile insurance carriers, or by individuals themselves. This agreement required the City to obtain and make available to Appellants numerous employee records, including personnel records, employee schedules, Blue Cross payment information and claim forms, schedules of workers' compensation claims and physician records.

The agreement indicated that Appellants would provide the City with detailed schedules of amounts they identified as claims that were improperly charged as Blue Cross medical claims. In return, the City was obligated to request repayment for these claims in excess of $1,000.00 and take all appropriate legal steps to collect these amounts. The City was responsible for all costs and attorney fees associated with its collection efforts. The City was further obligated to forward to Appellants 33.3% of the amounts collected or offset from future or existing invoices from Blue Cross, other insurance carriers or individuals. Appellants were also entitled to receive reimbursement from the City for reasonable travel, lodging and out-of-pocket expenses.[2] Finally, the last provision of the agreement provided that both parties agreed to binding arbitration in lieu of any other legal remedy.

In January of 2002, Mayor Connors' administration was replaced by that of newly-elected Mayor Chris Doherty. Appellants' representatives apparently met with Mayor Doherty and members of his new administration on January 25, 2002. At this meeting, Appellants presented the Mayor with a preliminary report as to the

---

1. In all, the agreement had been signed by then-Mayor Connors, George A. Saitta (a partner in Heffler, Radetich & Saitta, LLP) and Alexander J. Hoinsky (an officer with Solutions for Management, Inc.).

2. In the event that the City chose not to seek reimbursement, the agreement provided that Appellants would be entitled to 20% of the amounts it identified as improperly paid along with the aforementioned expenses.

ongoing audit as well as an analysis of the insurance claims improperly paid by the City through Blue Cross from 1999 to 2000. Nevertheless, subsequent to this meeting, Appellants allege that the Mayor and/or his representatives began to cancel meetings and failed to return phone calls. On April 22, 2002, in accordance with the last provision of the agreement, Appellants filed a demand for arbitration with the American Arbitration Association alleging a breach of contract on the part of the City.

On May 9, 2002, the City filed a petition for rule to show cause with the trial court alleging that the agreement signed by then-Mayor Connors was invalid and unenforceable as it was not approved in accordance with Sections 6–14(C) and (D) of the City's Administrative Code. These Sections require that all professional service contracts be approved by City Council, reviewed and approved by the City Solicitor and signed by the Mayor and the Controller as attested to by the City Clerk. The City indicated that with the exception of the Mayor's signature, no other procedural requirements were followed. As the agreement was invalid and unenforceable, the City alleged that it was not required to submit to arbitration with Appellants.

The trial court issued an order dated May 9, 2002, granting the City's petition and issuing a rule to show cause upon Appellants. The trial court directed Appellants to file an answer to the City's petition within ten days and directed both parties to complete discovery within forty-five days. Appellants filed an answer to the City's petition admitting that the agreement was only signed by its representatives and Mayor Connors. However, Appellants alleged that the agreement had been subsequently approved, ratified and endorsed by all required City officials, agents and representatives. Appellants

also alleged that the enforceability of the agreement should be decided by an arbitrator and not the trial court.

Appellants included new matter reiterating their allegations that the dispute should be decided by an arbitrator and that the agreement was approved, ratified and endorsed by all required City officials, agents and representatives. Further, Appellants alleged that the City's Administrative Code did not cover the parties' agreement to arbitrate and that the City was barred by the doctrine of ratification, judicial estoppel, equitable estoppel and laches from asserting the Mayor's lack of authority to bind the City or that the agreement was not enforceable. Appellants later filed a motion for summary judgment, seeking an order directing the City to proceed with them to arbitration before the American Arbitration Association. Appellants filed a brief with numerous exhibits, including numerous letters between representatives of Appellant and representatives of the City. The City thereafter filed an answer and brief in opposition to Appellants' motion.

Ultimately, the trial court issued an opinion and order dated July 20, 2004, denying Appellants' motion for summary judgment and providing that Appellants and the City shall not proceed with arbitration before the American Arbitration Association. In its opinion, the trial court cited to the specific procedures required for the City to enter into a valid contract, which Appellants admit were not followed in this case. The trial court noted that these procedures exist to "protect the citizens and taxpayers of the City of Scranton from ill-considered contracts, and to prevent collusion, favoritism and fraud." (Opinion of Trial Court at 8). The trial court also noted that because it was a court's responsibility to determine whether a valid agreement to arbitrate existed, it,

not the arbitrator, should decide whether the contract itself was valid.

As to Appellants' arguments concerning ratification and estoppel, the trial court first noted that those who contract with a municipality do so at their own peril and must inquire into the powers of the municipality and its agents to enter into contracts. *See Alco Parking Corporation v. Public Parking Authority of Pittsburgh*, 706 A.2d 343 (Pa.Super.1998), *petitions for allowance of appeal denied*, 555 Pa. 725, 725 A.2d 178 (1998) and 555 Pa. 731, 725 A.2d 182 (1998). The trial court also noted that even if a municipality's actions coincide with the terms of an unenforceable agreement that was not properly executed, such actions cannot be deemed to ratify the agreement and make it enforceable. *See Davis, Murphy, Niemiec and Smith v. McNett*, 665 A.2d 1322 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 543 Pa. 718, 672 A.2d 310 (1996). For the same reasons, the trial court indicated that promissory estoppel does not generally apply to illegal agreements with a municipality. The trial court proceeded to factually distinguish the cases relied upon by Appellants from the present case.

The trial court then concluded that because legislation from the City Council was required before this agreement could become valid, and City Council never approved the agreement or enacted this legislation, the agreement could not be ratified by actions of other City officials and the City is not estopped from denying its

validity. Even if this legislation was not required, the trial court indicated that the limited actions of the City's officials in the waning months of Mayor Connors' administration did not constitute ratification of the contract. Finally, the trial court noted that Appellants may be entitled to a quantum meruit fee for services it had performed and any resulting benefits retained by the City. Appellants thereafter filed a notice of appeal with the trial court.

On appeal to this Court,[3] Appellants first argue that the trial court erred in failing to hold that the scope or validity of an arbitration clause is to be decided in the first instance by the arbitrator. We disagree.

■ Admittedly, "[t]he Commonwealth favors the settlement of disputes by arbitration to promote the swift and orderly disposition of those claims." *McCarl's, Inc. v. Beaver Falls Municipal Authority*, 847 A.2d 180, 184 (Pa.Cmwlth.2004). In fact, due to the increasing crowding and congestion of our dockets, settlement of disputes by arbitration are encouraged and are no longer deemed contrary to public policy. *McCarl's, Inc.* Nevertheless, as our Superior Court has indicated, "the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." *McNulty v. H & R Block, Inc.*, 843 A.2d 1267, 1271 (Pa.Super.2004), *petition for allowance of appeal denied*, 578 Pa. 709, 853 A.2d 362

---

3. Our scope of review of an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). An abuse of discretion exists where the judgment exercised by the lower court is manifestly unreasonable. *Borough of Downingtown v.*

*Wagner*, 702 A.2d 593 (Pa.Cmwlth.1997), *affirmed*, 553 Pa. 452, 719 A.2d 742 (1998). Moreover, summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Salerno.*

(2004) and *cert. denied,* —— U.S. ——, 125 S.Ct. 667, 160 L.Ed.2d 497 (2004).

■ In this Commonwealth, the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for a court to decide. *McNulty; see also Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635 (Pa.Super.1998). In order to determine whether or not a claim is subject to arbitration, a court must engage in a two-prong analysis. A court must first determine whether a valid agreement exists and then it must determine whether the dispute is within the scope of that agreement. *See McNulty; Hazleton Area School District v. Bosak,* 671 A.2d 277 (Pa.Cmwlth.1996).

Based upon this established case law, we cannot say that the trial court erred in failing to hold that the scope or validity of an arbitration clause is to be decided in the first instance by the arbitrator.

Next, Appellants argue that the trial court erred in failing to hold that the agreement to arbitrate was properly and validly entered where nothing in the City's Administrative Code prohibits the Mayor from entering into agreements to arbitrate on behalf of the City. Again, we disagree.

Section 6–14(C) of the City's Administrative Code provides as follows:

> Personal, engineering and all other professional service contracts shall be exempt from the bidding requirements as established by the Administrative Code. All personal, engineering and all professional service contracts must first be approved by proper legislation prior to the issuing of a letter to proceed and/or the signing of any contract or agreement.

(R.R. at 9a). Section 6–14(D) of the City's Administrative Code provides that "all contracts must be reviewed and approved by the City Solicitor and signed by the Mayor and the Controller or their designated substitutes and attested to by the City Clerk." *Id.*

■ In arguing that nothing in the City's Administrative Code prohibits the Mayor from entering into agreements to arbitrate on behalf of the City, Appellants focus on a single provision in their agreement with the former Mayor. However, the present agreement consisted of more than this single provision. The agreement, if valid, would constitute a professional service contract between Appellants and the City. The aforementioned Sections of the City's Administrative Code set forth specific procedures that must be followed in order to execute such contracts.

Moreover, we have previously indicated that the statutory requirements for execution of municipal contracts are mandatory. *See Acchione v. City of Philadelphia,* 40 Pa.Cmwlth. 214, 397 A.2d 37 (1979). Appellants do not dispute that the procedures outlined in Sections 6–14(C) and (D) of the City's Administrative Code were not followed in this case. As such, we cannot say that the trial court erred in failing to hold that the agreement to arbitrate was proper and valid.

Next, Appellants argue that the trial court erred in failing to rule that the agreement between Appellants and the City was valid and enforceable and approved by everyone whose approval was required under applicable law. Again, we disagree.

■ "Where a municipality must execute a contract in a particular manner under legislative pronouncement, failure to comply with the pronouncement renders the contract unenforceable." *Alco Parking Corporation; see also Pittsburgh Baseball, Inc. v. Stadium Authority of the City of Pittsburgh,* 157 Pa.Cmwlth. 478, 630 A.2d 505 (1993), *dismissed,* 537 Pa.

614, 641 A.2d 313 (1994).[4] However, there are exceptions to this rule. In *Eckert v. Pierotti*, 123 Pa.Cmwlth. 8, 553 A.2d 114 (1989), this Court addressed the principle of ratification, stating that "[i]t is well settled that a municipal corporation may ratify contracts which are within its corporate powers and made by its officers without authority, or in excess of their authority." *Eckert*, 553 A.2d at 118.[5] In other words, the municipality may waive an irregularity of a municipal contract and ratify that contract. *Id.* This ratification may be made by the affirmative action of the proper officials or by any action or inaction which, under the circumstances, amounts to an approval of the contract. *Pittsburgh Baseball, Inc.; Eckert.*

■ In the present case, contrary to Appellants' argument that the agreement was approved by everyone whose approval was required under applicable law, the evidence of record fails to reveal that City Council was even aware of the agreement, let alone that they had approved of and enacted appropriate legislation relative to this agreement.[6] Nor does the evidence of record reveal the approval of the City Solicitor or the knowledge of the City Con-

troller, whose signature is required along with the mayor under Section 6–14(D) of the City's Administrative Code.[7] Moreover, we agree with the trial court that any action or inaction on the part of the members of the outgoing administration in its waning months did not "constitute 'ratification' of the contract." (Opinion of Trial Court at 8). Thus, we cannot say that the trial court erred in failing to rule that the agreement between Appellants and the City was valid and enforceable.

Finally, Appellants argue that the trial court erred by holding that non-applicable public policy concerns prevent a finding that the City ratified and is therefore estopped from denying the validity of the agreement. Once more, we disagree.

Our Pennsylvania Supreme Court has described the elements of estoppel as "1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel." *Chester Extended Care Center v. Department of Public Wel-*

4. The case of *Pittsburgh Baseball, Inc.* is factually similar to the present case. In *Pittsburgh Baseball, Inc.*, Pittsburgh Baseball, Inc. was attempting to enforce an alleged oral promise from the mayor of the city of Pittsburgh to contribute $25,000,000.00 towards the purchase and operation of the Pittsburgh Pirates baseball franchise. Ultimately, this Court held that the alleged oral contract with the mayor was not binding on the city where the relevant city code required all contracts with the city to be in writing and to be signed by the mayor and appropriate department head and where the city's Home Rule Charter required that all contracts regarding city affairs be authorized by resolution of city council.

5. We note, however, that the procedural problems in the present case were not present in

*Eckert.* To the contrary, the township in *Eckert* had formally approved and ratified the contract at issue in that case.

6. We note that there is a suggestion in the record that one City Council member may have been aware of the agreement.

7. We note that the evidence of record does include the cover page of a fax from Sara Picard, president of Millennium Healthcare, the City's healthcare consultant firm, to Lee Reedman, Esquire of the City's Solicitor's Office regarding a prior "claims audit conference call" and the obtaining of records from Blue Cross. (R.R. at 61a). However, this evidence fails to identify Mr. Reedman as the City Solicitor, let alone verify the City Solicitor's knowledge and approval of the agreement.

*fare,* 526 Pa. 350, 355, 586 A.2d 379, 382 (1991).

■ As to the third element, both this Court and our Superior Court have rejected claims similar to the ones at issue in the present case on the basis that those who contract with a municipal corporation do so at their own peril and must inquire into the powers of the municipal corporation and its agents to enter into any contracts. *See Pittsburgh Baseball, Inc.; Alco Parking Corporation.* Likewise, we reject any such claim by Appellants in the present case. Appellants dealt with the City at their own peril and it was their responsibility to become knowledgeable of the former Mayor's powers and authority. The City's Administrative Code provides specific procedures relating to the execution of contracts with the City. Appellants do not dispute that those procedures were not followed in this case. Thus, we cannot say that the trial court erred in failing to find that the City was estopped from denying the validity of the agreement.

Accordingly, the order of the trial court is affirmed.[8]

## ORDER

AND NOW, this 4th day of April, 2005, the order of the Court of Common Pleas of Lackawanna County is hereby affirmed.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent because the dispute in this case should be submitted to arbitration in accordance with the arbitration provision of the parties' agreement. The majority affirms the order of the Court of Common Pleas of Lackawanna County that denied Appellants' motion for summary judgment in which they sought

an order directing the City of Scranton, Appellee, to proceed to arbitration of their dispute before the American Arbitration Association. The issue involves a provision in the parties' agreement that requires them to submit contract disputes to binding arbitration, instead of pursuing some other legal remedy, and whether the question of the arbitrability of the dispute should be decided in the first instance by the arbitrator or by the trial court where the City claims that the agreement itself is void and unenforceable. The dispute arose out of the City's breach of the agreement requiring Appellant to perform certain audit services in connection with health insurance claims paid by the City through Blue Cross.

Based on Pennsylvania Superior Court decisions *McNulty v. H & R Block, Inc.,* 843 A.2d 1267 (Pa.Super.), *appeal denied,* 578 Pa. 709, 853 A.2d 362, *cert. denied,* —— U.S. ——, 125 S.Ct. 667, 160 L.Ed.2d 497 (2004), and *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635 (Pa.Super.1998), the majority concludes that "the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for a court to decide." Op. at 880. The majority therefore has ruled that the trial court did not err when it decided that it first must determine the validity of the agreement and then held that the agreement was not valid because the City did not follow specific procedures that were required before the City could enter into an agreement. The majority further concludes that Appellants may not proceed on theories of ratification or estoppel to validate their agreement.

I disagree with the majority's position that the dispute should not be submitted to the arbitrator under the agreement's bind-

---

**8.** We note, as we did in *Pittsburgh Baseball, Inc.,* that Appellants may be entitled to recover their expenses to date on a quantum meruit basis.

ing arbitration clause where the Pennsylvania Supreme Court has expressly held that parties should be bound by contract provisions requiring the arbitration of their disputes and that they should not be allowed to avoid the consequences thereof by challenges that question the validity of the contract itself. In *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974), the Supreme Court clarified that the water authority in that case had made no challenge to its capacity to enter into the employment agreement providing for common law arbitration of disputes, and the court noted that the parties operated under the agreement for more than 3 1/2 years. It ultimately concluded that the arbitration provision in the contract was framed in broad language, meaning that the parties intended the scope of the submission of their disputes to be unlimited. The court refused to allow the water authority to frustrate the parties' intention to arbitrate by making belated attacks upon the validity of the contract. That is precisely the situation here.

The Supreme Court cited with approval its decision in *Borough of Ambridge Water Authority* in *Borgia v. Prudential Ins. Co.*, 561 Pa. 434, 750 A.2d 843 (2000), which involved the interpretation of a clause in an insurance policy providing that in the event of a dispute as to policy coverage or amounts payable either party might make a written demand for arbitration. The Supreme Court reversed the Superior Court's decision in *Borgia* that the injured appellant was not a "covered person" under the policy and that, as a result, there

was no agreement to arbitrate between the appellant and Prudential. Citing with approval its prior decision in *Borough of Ambridge Water Authority*, the Supreme Court stated that the issue in *Borgia* was whether the appellant's claim of "covered person" status and his entitlement to demand arbitration was itself an arbitrable issue. The Supreme Court held that the arbitration clause in Prudential's policy must be construed broadly whereby the issue involved was to be determined by the arbitrator and not by the court.[1] It observed that interpreting the arbitration agreement in that manner comported with the settled principle that public policy favors arbitration.

Finally, in *McCarl's, Inc. v. Beaver Falls Municipal Authority*, 847 A.2d 180 (Pa. Cmwlth.2004), this Court reversed a trial court's order granting summary judgment to a contractor who claimed payment of sums due for certain work performed under contract with the authority. Once the contractor filed suit, the authority filed preliminary objections seeking dismissal of the complaint and requesting the trial court to require arbitration under the arbitration clause of the original contract. This Court reiterated the principle that settlement of disputes by arbitration outside of the court system is favored. Because the arbitration clause in *McCarl's, Inc.* was never canceled or otherwise nullified by subsequent agreements between the parties they were bound by the arbitration clause, and any remaining disputes had to be submitted to the arbitrator in accordance with that clause.

1. *Compare Township of Sugarloaf v. Bowling*, 563 Pa. 237, 759 A.2d 913 (2000) (holding that arbitrators and not the courts had authority in the first instance to determine arbitrability of a dispute arising under the Act known as Act 111, Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10, just as in disputes arising under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301, and reiterating that "it was folly" to permit full preliminary bouts in the courts over issues of an arbitrator's jurisdiction).

In the present controversy, there is no legal basis for looking beyond the clear language of the arbitration provision in the parties' agreement. They are to arbitrate any disputes that arise out of the auditing contract. At that time the City may challenge the validity of the contract itself, and based on the evidence presented the arbitrator can issue a ruling that either party may appeal if aggrieved. It is not inconceivable that once the parties submit their dispute to arbitration, as required under the contract, this dispute can be settled without court intervention. Otherwise, the majority's decision will effectively frustrate the whole notion of dispute resolution via a mechanism chosen by the parties to an agreement.[2]

---

2. The majority also upholds the trial court's decision that the agreement was not ratified by the City and that the City was not estopped from denying the validity of the agreement. These are issues for the arbitrator to decide during arbitration of the dispute when and if the City raises the issues. I disagree that under the facts of this case that the City's actions did not amount to a ratification of the agreement.