**PUNXSUTAWNEY MUNICIPAL AIRPORT AUTHORITY,** Appellant,

v.

**Michael LELLOCK, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1999.

Filed Jan. 21, 2000.

Nicholas Gianvito, Punxsutawney, for appellant.

William A. Shaw, Jr., Sayre, for appellee.

Before JOHNSON and MUSMANNO, JJ., and HESTER, Senior Judge.

HESTER, Senior Judge:

¶ 1 The Punxsutawney Municipal Airport Authority appeals from the judgment entered on May 3, 1999, after a jury determined that Michael Lellock, Appellee, did not owe Appellant back rent for a hangar he leased at its facility. Appellant urges that trial court error led to an improper result. We affirm.

¶ 2 In February 1997, Appellant filed this action for $14,381.30, against Appellee alleging he had failed to pay rent for an airport hangar he had leased from Appellant between June 1994 and January 1997. In response, Appellee countered that prior to acquiring his leasehold on the hangar, he negotiated an oral contract with Punxsutawney Municipal Airport Authority ("PMAA") Chairman, Reynold Chango. The agreement allegedly provided that Appellee would be given credit against rent for any capital improvements he made to the hangar. Appellee also averred that he made improvements to the hangar in excess of the amount of rent owed.

¶ 3 Prior to trial, Appellant filed a *motion in limine* asking the court to prevent Appellee from raising the oral agreement as a defense since there was no corporate record of the agreement. Appellant argued that even if an oral contract existed, it was invalid since its corporate by-laws

provided that unless otherwise ratified by Appellant's board, all contracts must be signed by the chairman.

¶ 4 Appellee responded that under Pennsylvania Law, a municipal authority may ratify an oral contract by the affirmative action of the proper officials. *See Eckert v. Pierotti*, 123 Pa.Cmwlth. 8, 553 A.2d 114 (1989). Appellee argued he had negotiated a valid, oral agreement with the chairman of the PMAA. Appellee urged that to deny the existence of the contract would expose Appellant to a claim of unjust enrichment since the value of Appellant's hangar increased as a result of the capital improvements he made. The court denied Appellant's motion, and the parties proceeded to trial.

¶ 5 The following evidence was introduced at the September 15, 1998 trial. In January 1979, Appellant entered into an agreement with three lessees in order to secure financing to construct an airport hangar on airport property. Appellant agreed to construct four individual hangars and lease the hangars to those lessees who advanced money for the construction. The lessees agreed to advance rent money to Appellant since Appellant had no funds to begin the construction. Each lessee agreed to advance Appellant $7,500.00, which it deposited in individual escrow accounts established for the lessees. The term of each lease began when the hangars were completed and continued thereafter until the funds in the individual capital accounts were depleted. During the term of each lease, the capital accounts were debited at a rate of $45.00 per month. The agreement also stated that when the funds in the capital accounts were depleted, the term of the lease would expire. However, the agreement also provided that each Lessee would be permitted to make capital improvements, with PMAA's approval, to their individually-leased hangar during the first five years of their lease. Any amount spent on capital improvements would be added to the Lessee's capital account and amortized against rent at a rate agreed upon by the parties.

¶ 6 In the fall of 1984, Appellee approached Appellant seeking permission to construct his own airport hangar at the airport. Rather than construct a hangar, Appellant recommended that Appellee assume a lease on one of the recently-constructed hangars. Gary Hollenbaugh, treasurer of PMAA, told Appellee that one of the original leaseholders was moving and a hangar was available. After viewing the unoccupied hangar, Appellee determined that much work still needed to be done. N.T. Trial, 9/15/98, at 67. The hangar was simply an empty shell with no heat or insulation. The roof leaked, there were no walls, and there was a dirt floor. *Id.* Appellee entered into an agreement with PMAA board members Mr. Chango and Mr. Hollenbaugh. The terms were that Appellee paid $5,100.00 to the original lessee, Jack Kehoe, in order to obtain the lease to the hangar. This amount reflected the remaining amortization period of the original leaseholder. Based upon the purchase price, Appellee was permitted to remain in the hangar until June 1, 1994. Appellee was subject to all of the terms and conditions of the original lessee's agreement with the leaseholder. Appellee testified that he had an agreement with Mr. Chango and Mr. Hollenbaugh that permitted him to make capital improvements to the hangar, which would extend the lease period and would be amortized against the rent he would owe. *Id.* at 69, 73. Appellee was familiar with the workings of PMAA and knew that Mr. Chango was its chairman and was well respected. He was confident that he could proceed with improvements to the hangar. *Id.* at 76, 88, 96. Appellee testified that the improvements that he has made are substantial and should more than account for any rent that he would have owed from June 1, 1994, to January 1997. *Id.* at 74.

¶ 7 The improvements to the hangar included the installation of a cement floor, walls, wiring, plumbing, and heating. Ap-

pellee is an engineer and worked from a set of prepared blueprints to insure that the work was done to proper specifications. *Id.* at 110. Whenever Appellee was not capable of completing work himself, he would hire professional contractors. Appellee recalled that Mr. Hollenbaugh told him to save his receipts for the improvements and they would serve as the basis for the amortization of the rent. *Id.* at 88.

¶ 8 Mr. Gary Hollenbaugh testified that when Mr. Chango was the chairman of PMAA, individuals relied upon his representations since Mr. Chango operated PMAA with full authority. Everything was managed in a relaxed, informal fashion, and all contracts were verbal. *Id.* at 125. Mr. Hollenbaugh testified that no one questioned Mr. Chango. Mr. Hollenbaugh also stated that Appellee showed his plans for improving the hangar to everyone at the airport, and everyone knew Appellant was making them. Those improvements were made with the approval of Mr. Chango. In fact, Mr. Hollenbaugh recalled that Mr. Chango was pleased with Appellee's capital improvements. *Id.* at 124. Mr. Hollenbaugh also testified that Appellee never would have been permitted to make the improvements without Mr. Chango's approval.

¶ 9 Donald Hawk was the vice-chairman of PMAA at the time when Appellee assumed the hangar lease. Through Mr. Hawk's testimony, he established that Appellee was justified in believing that any improvements he made at the hangar would be amortized against his rent. Specifically, Mr. Hawk recalled that the airport was in need of repair at the time, and any capital improvements were welcome by PMAA. *Id.* at 147. Mr. Hawk likened PMAA to a "good buddy operation" where Mr. Chango ran the airport "with an iron hand," *id.* at 136, and a handshake marked a decision. *Id.* at 139. He indicated that individuals who had dealings with Mr. Chango relied upon his word since he had a substantial sum of his own money invested in the airport, was a very good pilot,

and controlled most of the decision-making regarding the airport. Mr. Hawk was aware that Appellee assumed the hangar lease from the prior lessee and that Appellee had negotiated a private agreement with Mr. Chango. Mr. Hawk also was aware that Appellee was making improvements to the hangar and assumed that they would be amortized against his rent. Mr. Hawk had no objection to Appellee's improvements or any agreement regarding amortization of rent payments. Moreover, Mr. Hawk testified that around 1995, new members came onto the Board and decided to make an example of Appellee for non-payment of rent.

¶ 10 Mr. Max Neal, the current vice-chairman of the PMAA board, testified that the improvements made by Appellee to the hangar have increased the value of the hangar. *Id.* at 23. In 1989, after Appellant verified that the prior lessee had assigned his interest in the hangar to Appellee, Mr. Neal sent a letter to Appellee concerning questions regarding the capital improvements to the hangar. He also testified that while he was aware that Appellee was making repairs to the hangar, he had no specific knowledge of the extent of the repairs or of whatever verbal agreement Appellee had made concerning capital improvements. *Id.* at 20.

¶ 11 Rick Young, current chairman of the PMAA board, testified that on September 27, 1996, he sent Appellee a letter informing him that board records indicated that Appellee's amortization on the hangar had expired in May 1994. Appellant sent Appellee a bill for $1,735.00, indicating that the current rental for the hangar had increased from $45.00 per month to $65.00 per month. Mr. Young agreed that Appellee's improvements to the hangar have increased its value. *Id.* at 52. Moreover, Mr. Young admitted that he had no knowledge of any pre-existing agreement between Appellee and PMAA.

¶ 12 After the September 15, 1998 trial, a jury determined that Appellee was not responsible for any back rent, and that an

agreement existed between Appellant and Appellee which provided that any capital improvements made by Appellee to the leased hangar would be applied toward rental payments. The jury also determined that the agreement was made between Appellee and Mr. Chango, the former chairman of PMAA's board, on behalf of the PMAA. In addition, the jurors decided that the agreement was enforceable through the doctrines of ratification or estoppel. Finally, the jury concluded that the cost of the capital improvements made by Appellee to the leased hangar were equal to or exceeded the amount of rent owed. Appellant filed post-trial motions, which were denied. This appeal followed.

¶ 13 First, we will address Appellant's claim that the trial court erred in permitting testimony regarding out-of-court statements made by Mr. Reynold Chango, who is deceased. Appellant urges that the statements were entered in violation · of the Dead Man's Rule and constituted impermissible hearsay. Appellant agues that the alleged statements made by Mr. Chango were the only evidence Appellee presented regarding the alleged oral agreement granting Appellee permission to offset his rental payments by making improvements to the hangar. Appellant maintains that the trial court erred in permitting Appellee to present the defense of an alleged oral agreement.

The Dead Man's Rule provides:

§ 5930. **Surviving party as witness, in case of death, mental incapacity, etc.**

... where any party to a thing or contract is dead, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ... shall be a competent witness to any matter occurring before the death of said party.

42 Pa.C.S. § 5930.

¶ 14 The rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony. *In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47 (1987). In order for a witness to be disqualified from testifying under this statute, the deceased must have had an actual right or interest in the matter at issue, the interest of the witness must be adverse, and the right of the deceased must have passed to a party of record who represents the deceased's interests. *Larkin v. Metz*, 398 Pa.Super. 235, 580 A.2d 1150 (1990). Specifically, the application of the Dead Man's Rule requires that the interest of the proposed witness be adverse to the interest of the decedent's estate. *Gibbs v. Herman*, 714 A.2d 432 (Pa.Super.1998).

¶ 15 Appellant contends that Appellee's interest was adverse, and Mr. Chango had an interest in the outcome of the suit as PMAA board chairman. Preliminarily, we note that Mr. Chango died even before Appellee was able to complete his improvements to the hangar. N.T., 9/15/98, at 98. Consequently, Mr. Chango was not a member of the PMAA board when this suit was filed against Appellee, nor is there any indication that in his lifetime, Mr. Chango would have initiated a lawsuit against Appellee on behalf of PMAA. Further, it is clear that PMAA, not its individual existing board members, filed suit against Appellee. Consequently, none of the current or past board members are parties to this suit, and none of the board members have an individual, personal interest in this suit. Clearly, the individual board members have no legal claim against Appellee, would suffer no personal loss in the event of an unfavorable outcome to the lawsuit, and would experience no personal financial advantage from a favorable outcome. Therefore, a judgment in favor of Appellee could have no adverse impact on Mr. Chango's estate. The trial court did not

err in permitting Appellee to introduce testimony regarding the alleged oral agreement between himself and Mr. Chango.

¶ 16 Next, we address Appellant's contention that the trial court erred in denying its motion *in limine* to preclude Appellee from presenting evidence regarding the oral agreement. Appellant claims that Appellee should be bound by the written agreement, which provides that only improvements which the board approves could offset rent. Without PMAA board records indicating that permission for capital improvements was authorized, Appellant contends that Appellee should be given no credit for his renovations since oral contractual promises made by board members, but not ratified by board vote, are unenforceable.

¶ 17 Appellant's bylaws enable the board of directors to "conduct, manage, and direct the affairs of the corporation, [and] the directors shall act only as a board and the individual directors shall have no power as such ..." Article II §§ 1, 10. Appellant urges that the court erred in holding that Appellee should be able to present the defense of the doctrine of promissory estoppel to the jury. Appellant argues that Appellee should have been precluded from presenting the defense as a matter of law since "persons contracting with a government agency must, at their peril, know the extent of the power of its officers making the contract." Appellant's brief at 10 (quoting *Central Storage & Transfer Co. v. Kaplan*, 487 Pa. 485, 410 A.2d 292, 294 (1979)).

¶ 18 Preliminarily, we note that Appellant's bylaws do not require that all contracts made by and on behalf of Appellant be in writing. Further, there is no provision in the January 25, 1979 hangar lease agreement which requires written documentation for approval of renovations. While Appellant argues that its bylaws render any oral contract which is not subsequently ratified by board vote invalid, the ratification of a contract by a municipal

authority can be established through the affirmative action of the proper officials, or by any action or inaction which amounts to approval of the contract. *See Eckert v. Pierotti*, 123 Pa.Cmwlth. 8, 553 A.2d 114 (1989). Moreover, a "municipality like a private corporation ... may be estopped to deny the authority of its agents to act if it has the power to act." *Albright v. City of Shamokin*, 277 Pa.Super. 344, 419 A.2d 1176, 1178 (1980).

¶ 19 Herein, PMAA board members watched and waited from 1984 to 1997 when the instant complaint was filed, as Appellee slowly, but consistently made improvements to the hangar he was leasing. Not one board member ever approached Appellee to prevent him from continuing with his plans to improve the hangar. Common practice in the past led Appellee to believe he was acting in conformance with accepted procedure regarding amortization of rental improvements for improvements to PMAA hangars. Clearly, the court did not err in concluding that Appellant, in fact, did ratify Appellee's oral contract.

¶ 20 Moreover, Appellant argues that the trial court erred in permitting Appellee to present an argument that inaction by a municipal authority may be sufficient to ratify a contract as a matter of law. However, the trial court did not err in concluding that Appellee should be able to present evidence on promissory estoppel since the principle has been applied to municipal corporations. *See Albright v. City of Shamokin, supra*; *see also Breinig v. County of Allegheny*, 332 Pa. 474, 2 A.2d 842 (1938).

¶ 21 Our Supreme Court has stated that the essential elements of estoppel are misleading words, conduct, or silence by the party against whom estoppel is asserted, unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel, and the lack of duty to inquire on the party asserting estoppel. *Chester Extended Care Center v.*

*Department of Public Welfare*, 526 Pa. 350, 586 A.2d 379 (1991). Herein, testimony established that PMAA operated in an informal fashion, board members deferred to Mr. Chango's authority and his wishes concerning airport operation, Appellee made many improvements to the hangar, board members were aware that Appellee was making the improvements, and no board member did anything to stop Appellee from continuing with his plans to improve the hangar. The court, in reliance upon *Pittsburgh Baseball, Inc. v. Stadium Authority of the City of Pittsburgh*, 157 Pa.Cmwlth. 478, 630 A.2d 505 (1993), noted that municipal inaction, plus the acceptance of benefits, may constitute ratification and concluded that since evidence exists which tends to show that such ratification may have occurred, the jury should be able to determine whether a valid oral contract existed. We can find no abuse of discretion.

¶ 22 Finally, Appellant urges that the court erred in permitting Appellee to testify regarding the value of improvements to the hangar since he should be given no credit for such improvements under the doctrine of unjust enrichment. In reliance upon *Third National Bank & Trust Co. v. Lehigh Valley Coal Co.*, 353 Pa. 185, 44 A.2d 571 (1945), Appellant asserts that where a written agreement exists, the doctrine of unjust enrichment must be governed by the written agreement. Due to the fact that the written agreement between the parties required board approval before capital improvements could be made, and since it is Appellant's position that Appellee never obtained board approval, Appellant argues Appellee is precluded by law from prevailing.

¶ 23 The agreement dated January 25, 1979, which governs the lease of PMAA's hangar rental to Appellee, provides in pertinent part:

Capital improvements after the expiration of five (5) years from the beginning of the term of the lease shall only be made upon agreement between the Lessor and the individual Lessee and will be amortized against rent at a rate to be agreed upon by the Lessor and Lessee.

. . . .

[t]he Lessor shall be the sole authority on what shall constitute a capital improvement to the leased premises, and no capital improvement to which the Lessee shall expect capital credit shall be made without approval by the Lessee [sic] in advance.

¶ 24 Appellee does not deny that he is bound by this agreement. At issue, herein, is Appellee's contention that the oral approval he obtained from Mr. Chango and the acquiescence he received from other board members to make improvements to the hangar constituted board approval. Consequently, Appellee presented evidence to the jury concerning the value of the improvements so that if the jury determined that an oral agreement existed, the jury could apply the value of the improvements against the rent Appellant claimed was owed to it. In the alternative, Appellee asserts that in the event the jury finds that no oral agreement existed and he owes rent, Appellant would be unjustly enriched by the improvements Appellee made to the hangar; therefore, Appellee requests reimbursement.

¶ 25 Conversely, Appellant's contention is that no oral agreement existed or that Mr. Chango had no authority to make such an oral agreement on behalf of Appellant. It is because of Appellant's position that no valid agreement existed with regard to improvements that Appellee claims Appellant was enriched unjustly by his endeavors.

¶ 26 Evidence presented by Appellee established that Mr. Chango had the ultimate authority over airport business while he was the chairman. The PMAA was managed informally and rarely were decisions made pursuant to a quorum. Further, due to Mr. Chango's extensive knowledge, experience, and the capital that he

personally had invested in the facility, other board members deferred to his judgment. Moreover, Appellee offered testimony that other board members were aware of his ongoing improvements and noted their approval of his efforts. No board member ever approached Appellee to express concern over the activity at the hangar. Clearly, the jury was convinced that an oral agreement existed which was approved by the board. We will not disturb this credibility determination. Since we have determined that the jury relied upon credible evidence supporting Appellee's contention that an oral agreement existed, the parties are bound by the oral agreement. Likewise, the jury determined that the value of Appellee's improvements was equal to or exceeded the value of the rent Appellant sought to collect. Therefore, there is no need to address the issue of unjust enrichment.

¶ 27 Judgment affirmed.