J-A24005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DOROTHY BLACKMON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACK MOORE, JR., ADMINISTRATOR | : | |
| OF THE ESTATE OF ZACK MOORE, | : | |
| SR. | : | No. 2127 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160700895 July Term, 2016

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **Filed: February 7, 2020**

Appellant, Zack Moore, Jr., administrator of the estate of Zack Moore, Sr., appeals from the judgment entered on September 5, 2018, in favor of Appellee, Dorothy Blackmon, and against Appellant after a non-jury trial in Appellee's action to quiet title.[1]  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from the June 20, 2018 order denying his motion for post-trial relief; however, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. **See generally Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511 (Pa. Super. 1995) (*en banc*).  Although Appellant's notice of appeal was filed prematurely in the instant matter, judgment was subsequently entered on September 5, 2018.  A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction.  **Drum v. Shaull**

The trial court set forth the following summary of the procedural history

and relevant facts of this case in its Pa.R.A.P. 1925(a) opinion:

> This case arises out of a dispute over whether an agreement of sale for a home located at 2023 Wilder Street in Philadelphia, Pennsylvania ("herein Subject Property") was perfected in 1986 between [Appellee] and Zach Moore, Sr.[,] deceased. Additionally, due to the fact that [Appellee] has lived in the subject property undisturbed for thirty-two (32) years, a claim of adverse possession was also brought by [Appellee] against [Appellant] and considered by this [c]ourt.
>
> On July 12, 2016, [Appellee] commenced the above-captioned litigation by filing an action to quiet title. [Appellant] filed preliminary objections on September 21, 2016, which were overruled on December 1, 2016. [Appellant] filed an answer to [Appellee's] [c]omplaint on March 9, 2017. On July 17, 2017, [Appellant] filed a motion *in limine*, invoking the Dead Man's Act, seeking to preclude [Appellee] from presenting any testimony regarding any matter occurring before the death of Zack Moore[,] Sr.[1] On November 30, 2017, this case proceeded to a bench trial before the Honorable Kenneth J. Powell[,] Jr. After trial ended, this [c]ourt granted both parties an opportunity to file Findings of Fact and Conclusions of Law. Both parties filed Findings of Fact and Conclusions of Law. On June 7, 2018, this [c]ourt found in favor of [Appellee]. On June 19, 2018, [Appellant] filed a post-trial motion, which was denied by this [c]ourt on June 20, 2018….
>
> [1] 42 Pa.C.S.[] § 5930.
>
> [Appellee's] son, George Blackmon, testified that they moved into the property as renters in either 1974 or 1973[,] and that he resided in the property until sometime on or around 2006. Mr. Blackmon testified that his parents entered into an agreement

---

*Equipment and Supply Co.*, 787 A.2d 1050 (Pa. Super. 2001). Thus, Appellant's notice of appeal relates forward to September 5, 2018. *See* Pa.R.A.P. 905(a)(5) (stating that a notice of appeal filed after a court's determination but before the entry of an appealable order/judgment shall be treated as if it was filed after the entry of the appealable order/judgment and on the date of entry). Hence, no jurisdictional defects impede our review. We have adjusted the caption accordingly.

with Zack Moore[,] Sr.[,] in 1985[,] to purchase the subject property and that he directly witnessed the transaction. They attempted to memorialize the agreement by deed but were unable to because Zack Moore[,] Sr.[,] moved to South Carolina. Zack Moore[,] Sr.[,] did not respond to [Appellee's] request to do so. Mr. Blackmon and his family have paid the property taxes and utilities since 1986 and conducted maintenance of the property. [Appellee] is disabled and installed a wheelchair ramp[] at the [family's] expense[,] to provide easier access to the subject property. [Appellee] provided receipts to show payments they have sent to the City of Philadelphia to pay the property taxes. Mr. Blackmon helped his parents out with their finances at the time of the alleged property transaction. Mr. Blackmon had never met [Appellant] until he showed up to evict [Appellee] from the subject property. [Appellee's] daughter, Betty Collins, testified that she was present for the sale of the subject property and it was her understanding that her family owned it. Ms. Collins also testified that her family pays the bills and makes the improvements on the subject property. Her parents had a friendly relationship with Zack Moore[,] Sr.

[Appellant] testified that his deceased father, Zack Moore[,] Sr.[,] never lived in South Carolina. [Appellant] testified that he lived with his father in Philadelphia. [Appellant] claimed that he met [Appellee] and her family when he would accompany his father to pick up rent from various rental properties he owned.

[Appellant] testified that his father's body was transported to South Carolina after he died. [Appellant] was notified by the city of Florence, South Carolina[,] by letter[] in October of 2015[,] that his father owned properties in Philadelphia.[2] He testified that his father's real signature is not on the documents that [Appellee] introduced as exhibits in this case. On [c]ross-[e]xamination[,] [Appellant] testified that he never saw his father write out his full name in cursive and that he wouldn't know whether his father spelled his name with a "K." [Appellant] and Zack Moore[,] Sr.[,] did not make payments on the property taxes for the subject property between 1986 and 2012.

[2] This date is disputed. [Appellee] elicited testimony from [Appellant] about notice of these properties from the city of Florence, South Carolina[,] as early as 2004.

Trial Court Opinion ("TCO"), 4/2/19, at 1-3 (citations to record omitted).

- 3 -

On July 9, 2018, Appellant filed a timely notice of appeal, followed by a timely, court-ordered Rule 1925(b) concise statement of errors complained of on appeal. Herein, Appellant raises the following issues for our review:

1. Whether the trial court lacked subject matter jurisdiction, as [Appellee] failed to join an indispensable party, namely, the Estate of George W. Blackmon, Sr.[,] which had interests in both Count I and Count II of [Appellee's] Complaint, as Mr. Blackmon, Sr.[,] and Mr. Moore, Sr.[,] were the only two individuals identified on the document the trial court considered to be the agreement of sale and Mr. Blackmon's [e]state has an interest in the allegations related to adverse possession?

2. Whether the court erred in denying [Appellee's] [m]otion *in* [*l*]*imine* regarding the Dead Man's Act and allowing [Appellee], Mr. Blackmon, Jr.[,] and Betty Collins to testify as witnesses in this matter, even though the Dead Man's Act rendered them incompetent to testify[?]

3. Whether the trial court erred in finding that a five[-]year statute of limitations was not applicable to [Appellee's] claim for specific performance?

4. Whether the [c]ourt erred as a matter of law in finding in favor of [Appellee] that "[o]n August 7, 1985, [Appellee] … and her husband, now deceased, entered into an Agreement of Sale with Zack Moore, Sr.[,]" as [Appellee] failed to produce any evidence sufficient to satisfy the Statute of Frauds.

5. The [c]ourt erred in allowing testimony regarding the purported signature of Mr. Blackmon on P-1 and P-2, as [Appellee] did not introduce into testimony a handwriting expert and Mr. Blackmon testified that his purported familiarity with Mr. Moore's signature was acquired for the current litigation.

6. Whether the [c]ourt erred in finding that [Appellee] established the elements of adverse possession by clear and convincing evidence where it was decided by the Honorable Leo Tucker in 2013, that there were unpaid taxes on the property stemming back from 200 [*sic*], and [Appellee] is at best a holdover tenant?

Appellant's Brief at 11-12.

> We apply the following standard of review to a non-jury trial verdict:

> Our appellate role in cases arising from non[-]jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.

> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to facts of the case. The trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

*Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) (internal citations and quotation marks omitted).

First, Appellant asserts that the estate of George W. Blackmon, Sr., has an interest in the underlying action and that Appellee's failure to join the estate strips the trial court of subject matter jurisdiction. Appellant's Brief at 14. Appellant bases his claim, however, on the erroneous conclusion that, "[u]pon Mr. Blackmon's death, his interest [in the subject premises] … would

have passed to his [e]state, thereby rendering his [e]state an indispensable party to this action." *Id.* at 19.[2]  This claim is wholly without merit.

It is well-settled that:

Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 90 (Pa. Super. 2014). "Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised *sua sponte*." *Barren v. Dubas*, … 441 A.2d 1315, 1316 ([Pa. Super.] 1982) (internal quotation marks and citations omitted).

*Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa. Super. 2015).

"A party is indispensable 'when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'"  *City of Phila. v. Commonwealth*, … 838 A.2d 566, 581 ([Pa.] 2003), quoting *Sprague v. Casey*, … 550 A.2d 184, 189 ([Pa.] 1988).  "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." *Grimme Combustion, Inc. v. Mergentime Corp.*, … 595 A.2d 77, 81 ([Pa. Super.] 1991), citing *Sprague, supra*.  We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

---

[2] Appellant relies on *Miller v. Benjamin Coal Co.*, 625 A.2d 66 (Pa. Super. 1993), in which the Court stated that in actions "intended to affect the title to property which is either held or claimed by tenants by the entireties, both spouses are indispensable parties and must be joined."  Appellant's Brief at 17 (quoting *Miller*, 625 A.2d at 68).  *Miller* is clearly distinguishable from the present case, however, as both spouses in *Miller* were still living at the time the action was brought.  Instantly, Appellee is the only living spouse.

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Martin v. Rite Aid of Pa., Inc.*, 80 A.3d 813, 814 (Pa. Super. 2013); accord *Mechanicsburg Area Sch. Dist. v. Kline*, … 431 A.2d 953, 956 ([Pa.] 1981). "In determining whether a party is indispensable, the basic inquiry remains 'whether justice can be done in the absence of a third party.'" *Pa. State Educ. Ass'n v. Commonwealth*, … 50 A.3d 1263, 1277 ([Pa.] 2012), quoting *CRY, Inc. v. Mill Serv., Inc*., … 640 A.2d 372, 375 ([Pa.] 1994).

*Id.* at 406-07.

Taking into consideration the foregoing principles, the trial court concluded:

In this case, the only party who is claiming title over the subject property is [Appellee]…. Appellant argues that the [e]state of George W. Blackmon, Sr.[,] should have been joined. However, George W. Blackmon, Sr.[,] is dead[,] so he is incapable of claiming title over the subject property. Any interest that George W. Blackmon, Sr.[,] had in the subject property would have passed by operation of law, at the time of his death, to [Appellee] because they were married, which made them tenants by the entirety.[3] At issue in this case, is whether [Appellee], who is very much alive and currently living at the subject property, can satisfy the necessary burden to maintain her quiet title action.

TCO at 8. We agree.

The trial court found that Appellee and her husband, now deceased, entered into an agreement of sale on August 7, 1985, with Zack Moore, Sr.,

_____

[3] "It is axiomatic that the death of a tenant by the entireties results in ownership by the surviving spouse of the interest held by the deceased and that spouse." *Vargas v. Brinton*, 451 A.2d 687, 690 (Pa. Super. 1982). "To find that the death of a spouse results in the surviving spouse owning less than the share owned by the couple by tenants by the entireties, would render such tenancies meaningless." *Id.*

- 7 -

and that they held their interest in the property as tenants by the entireties. *See* Order, 6/6/18 at 1 ¶2; TCO at 8. It is settled law in Pennsylvania that "[t]he purchaser becomes equitable owner of the land *upon execution of the contract*; the seller retains legal title merely as security for payment of the unpaid purchase money." *Zitzelberger v. Salvatore*, 458 A.2d 1021, 1023 (Pa. Super. 1983) (emphasis added). *See also Yannopoulos v. Sophos*, 365 A.2d 1312, 1314 (Pa. Super. 1976).[4] Thus, despite the fact that Zack Moore, Sr.[,] failed to memorialize the sale with the recording of a deed, Appellee and her husband became the equitable owners of the property at the time the sale agreement was executed. Upon his death, it is clear that George W. Blackmon's interest in the property passed to Appellee and, therefore, his

---

[4] In *Yannopoulos*, this Court explained:

> The moment an agreement of sale is executed and delivered it vests equitable title to the realty in the purchaser. The sellers are then relegated to the position of trustees of the real estate, holding the bare legal title for the purchasers who become trustees for the balance of the purchase money for the sellers. *Kerr et al. v. Day*, 14 Pa. 112 (1850). Although legal title remains with the sellers until the deed is executed, the equitable interest passes to the purchasers and the sellers' interest becomes personal property even though legal title remains as security for its payment. *Foster v. Harris*, 10 Pa. 457 (1849); *Spratt v. Greenfiled*, … 124 A. 126 ([Pa.] 1924).

*Yannopoulos v. Sophos*, 365 A.2d at 1314. *See also In re Highberger's Estate*, 360 A.2d 580, 581 (Pa. 1976) (recognizing that "the execution of an agreement of sale of real property converts, through the doctrine of equitable conversion, the seller's interest into personalty and the buyer's interest into realty. The seller is said to hold legal title as trustee for the purchaser").

estate is not an indispensable party to this action. Accordingly, we discern no abuse of discretion or error of law by the trial court.

Next, Appellant argues that the trial court erred in denying his Motion *in Limine* regarding the Dead Man's Act and allowing Appellee, Mr. Blackmon, Jr., and Betty Collins to testify at trial. Appellant's Brief at 11. Appellant contends that, under the Dead Man's Act, Appellee, Mr. Blackmon, Jr., and Betty Collins "should have been declared incompetent to testify regarding matters occurring before the death of Zack Moore, Sr." ***Id.*** at 20. We deem Appellant's claim to be wholly without merit.

We begin our analysis of this issue by setting forth the following well-established principles:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.***, 933 A.2d 664 (Pa. Super. 2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." ***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa. Super. 2014).... A trial court's decision to grant a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." ***Id.***

***In re Fiedler***, 132 A.3d 1010, 1023 (Pa. Super. 2016).

> The Dead Man's Act provides, in relevant part, as follows:

> Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, … and his right thereto or therein has passed … to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased…, shall be a competent witness to any matter occurring before the death of said party….

- 9 -

42 Pa.C.S. § 5930. "The rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony." **Punxsutawney Mun. Airport Authority v. Lellock**, 745 A.2d 666, 670 (Pa. Super. 2000). The Dead Man's Act is an exception to the general rule of evidence in this Commonwealth that "no interest or policy of law … shall make any person incompetent as a witness." **Larkin v. Metz**, … 580 A.2d 1150, 1152 ([Pa. Super.] 1990) (citing 42 Pa.C.S. § 5921).

Under the Dead Man's Act[,] three conditions must exist before the surviving party or witness is disqualified: "(1) the deceased must have had an actual right or interest in the matter at issue, *i.e.*[,] an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest." **In re Hendrickson's Estate**, … 130 A.2d 143, 146-47 ([Pa.] 1957); **Weschler v. Carroll**, [578 A.2d 13 (Pa. Super. 1990)].

**Larkin**, 580 A.2d at 1152.

**Fiedler**, 132 A.3d at 1024. Appellant, as the party challenging the competency of the witnesses, has the burden of proving incompetency. **See Pagnotti v. Old Forge Bank**, 631 A.2d 1045, 1046 (Pa. Super. 1993) (citing **In re Estate of Rider**, 409 A.2d 397 (Pa. 1979)). We further note that the Dead Man's Act "applies only to oral testimony." **Larkin**, 580 A.2d at 1153. "Written evidence offered by an adverse surviving party is not rendered incompetent by the Dead Man's Act and is admissible." **Id.** Moreover, the Dead Man's Act does not render incompetent testimony which identifies written instruments signed by the deceased prior to his death. **See McHenry v. Stapleton**, 278 A.2d 892, 895 (Pa. 1971).

As to Appellant's claim that the trial court should have barred Appellee's testimony regarding matters which occurred before the death of Zack Moore, Sr., the court expressly stated that it did *not* take her testimony into consideration. *See* TCO at 11. Following is a thorough explanation provided by the trial court as to why it permitted Appellee to testify at trial and as to its finding that Appellee's testimony was *not admissible* under the Dead Man's Act:

> In this case, [Appellant] filed a Motion *in Limine* to preclude [Appellee] from testifying about any matter occurring before the death of the decedent, Zack Moore, Sr., on July 17, 2017. [Appellant] cited the Dead Man's Act as the dispositive authority barring [Appellee's] testimony. This motion was filed well over one year prior to this case being assigned to this court. [Appellant] did not notify this court of its existence until shortly after this trial commenced. Puzzled by [Appellant's] lack of preparation, this court decided to hear all the testimony before making a determination about whether certain testimony from [Appellee] and her witnesses would be barred by the Dead Man's Act….
>
> Furthermore, this court had an additional consideration. [Appellee] appeared in court in a hospital gurney and was clearly in poor health. Due to the amount of effort it took to get [Appellee] into the courtroom, it would not have been fair to reschedule the trial or put [Appellee] through undue delay, because [Appellant] decided to present this court with a … motion requiring extensive research on the morning of trial.
>
> This court determined that the testimony of [Appellee] would not be admissible under the Dead Man's Act. This court did *not* consider her testimony.

*Id.* at 10-11 (unnecessary capitalization omitted; emphasis added).

In response to Appellant's claims regarding the testimony of George Blackmon, Jr., and Betty Collins, however, the court opined:

- 11 -

> [T]his court *did* consider the testimony of [Appellee's] two witnesses, George Blackmon[, Jr.,] and Betty Collins. Neither of them are parties to this litigation. This court also considered the exhibits introduced by [Appellee], because the Dead Man's Act only applies to oral testimony. **Larkin**, 580 A.2d at 1153. It was [Appellant's] burden under **Pagnotti**[,] **supra**[,] to show this court why their testimony should be disqualified. [Appellant] did not meet that burden. No testimony was elicited during direct-examination or cross-examination showing that either witness has a pecuniary interest in the outcome of this trial that would disqualify them under the Dead Man's Act. [Appellant] submitted no substantive exhibits or oral argument in support of this argument either. Furthermore, [Appellant's] motion *in limine* provided very little in the way of analysis apart from opining that [Appellee's] interest is "adverse." [Appellant] has provided nothing but bald allegations and conclusions of law in [his] quest to disqualify these witnesses. Thus, [he] did not meet [his] burden to disqualify George Blackmon[, Jr.,] and Betty Collins. This court was free to consider their testimony.

*Id.* at 11-12 (emphasis added). We discern no error of law or abuse of discretion by the trial court. Additionally, we deem Appellant's claim regarding the inadmissibility of the testimony of George Blackmon, Jr., and Betty Collins under the Dead Man's Act to be waived due to Appellant's failure to properly preserve this issue.[5] *See* Pa.R.A.P. 302(a) (stating "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Appellant also argues that the trial court erred in deciding that Appellee's claim for specific performance was not barred by the statute of limitations. Appellant's Brief at 24. More specifically, Appellant avers that an action for specific performance of a contract for sale of real property must be

---

[5] Appellant's Motion *in Limine* sought to preclude *only Appellee's testimony* as to any matters occurring prior to the death of Zack Moore, Sr. The motion is devoid of any discussion regarding the testimony of George Blackmon, Jr., and/or Betty Collins.

commenced within five years of the date that the agreement of sale was made. *Id.* at 25 (citing 42 Pa.C.S. § 5526; *Lamb v. Allegheny County Inst. Dist.*, 69 A.2d 117 (Pa. 1949)). Appellant notes that Appellee's quiet title action was filed in 2016, "more than five years from the date of the purported agreement of sale." *Id.*

To begin, we note that Section 5526 provides, in relevant part:

The following actions and proceedings must be commenced within five years:

…

(2) An action for specific performance of a contract for sale of real property or for damages for noncompliance therewith….

42 Pa.C.S. § 5526(2).

We further recognize:

"The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Schaffer v. Larzelere*, … 189 A.2d 267, 269 ([Pa.] 1963); *Pocono Int'l Raceway v. Pocono Produce*, … 468 A.2d 468, 471 ([Pa.] 1983). The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made….

The "discovery rule," so-called, is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Hayward* [*v. Medical Ctr.*], … 608 A.2d [1040,] … 1043 [(Pa. 1992)]; *Schaffer*, … 189 A.2d at 270…. [T]he rule is an equitable one, which excludes the period of time during which the injured party is reasonably unaware that an injury has been sustained so

- 13 -

that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury. *Hayward*, … 608 A.2d at 1043.

*Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997) (emphasis omitted).

Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury. *Smith v. Bell Telephone Co. of Pennsylvania*, … 153 A.2d 477, 481 ([Pa.] 1959). Specifically, the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the [fact-finder]; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law. *Sadtler v. Jackson-Cross Co.*, … 587 A.2d 727, 732 ([Pa. Super.] 1991).

*Hayward*, 608 A.2d at 1043. Moreover,

it is not relevant to the discovery rule's application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises.

∗∗∗

[A] statute of limitations, like all statutes, must be read with reason and common sense; that its application to a given set of circumstances, must not be made to produce something that the General Assembly could never have intended; and that its interpretation must be guided by the presumption in the Statutory Construction Act that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. *Ayers* [*v. Morgan*], 154 A.2d [788,] 789 [(Pa. 1959)]. *See* 1 Pa.C.S. § 1922(1)….

*Fine v. Checcio*, 870 A.2d 850, 859-60 (Pa. 2005).

In accordance with the foregoing principles, the trial court held:

Here, it would be inequitable to apply a statute of limitations to [Appellee], due to the fact that [Appellee] lived in this property undisturbed for thirty years until [Appellant] appeared out of nowhere attempting to claim the property in 2016. [Appellee] had

- 14 -

no reason to file an action to quiet title at any time prior to [Appellant's] intervention because she believed that the property was in her possession, purchased legally from Zack Moore[,] Sr. Zack Moore[,] Sr.[,] never held up his end of the bargain to memorialize the agreement of sale by deed, even after [Appellee] asked him to come back from South Carolina to finish the deal. The testimony is clear that [Appellee] and her family lived their lives in the subject property without any interference from Zack Moore[,] Sr.[,] or [Appellant] for decades. Thus, because [Appellee] was only made aware of the title issue after [Appellant] intervened on behalf of Zack Moore[,] Sr.'s estate, this [c]ourt determined that it could not punish [Appellee] for the sins of Zack Moore[,] Sr.

TCO at 12-13. (citations to record omitted). The application of the discovery rule here results in the tolling of the statute of limitations until 2016, when Appellee became aware of the dispute regarding her ownership of the subject premises.[6] Appellee immediately thereafter proceeded with the filing of an action to quiet title in July of 2016, well within the applicable statute of limitations period. *See* 42 Pa.C.S. § 5526(2). Thus, we discern no abuse of discretion or error of law in the trial court's finding that Appellee's claim is not barred by the statute of limitations.

Moreover, we believe that equity demands the application of the discovery rule in this matter, considering that the agreement of sale has been substantially performed by Appellee. All that is remaining to be completed is

---

[6] We acknowledge that Appellee was aware that Zack Moore, Sr., failed to execute a deed following the execution of the sale agreement. However, for the purpose of applying the discovery rule in this matter, we ascertain that the "injury" did not exist until Zack Moore, Jr., intervened on behalf of his father's estate and claimed title to the property.

the transfer of legal title by execution of a deed.[7]   We presume that the legislature would never have intended for Appellant to be able to successfully assert the statute of limitations as an affirmative defense to bar Appellee's claim to quiet title where Appellee has complied with the sale agreement, requested a deed from Zack Moore, Sr., and the failure to execute the deed falls solely on Zack Moore, Sr.

In his next two issues, Appellant avers the trial court erred in finding that the two rent book pages produced by Appellee at trial were sufficient to satisfy the Statute of Frauds and that the documents were authenticated. Appellant's Brief at 27.   After careful review, we deem Appellant's claims to be meritless.

As we have previously explained:

"The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the [party] granting the

---

[7] In **Payne v. Clark**, 187 A.2d 769 (Pa. 1963), the Court stated:

From the moment an agreement of sale of real estate is executed and delivered it vests in the grantee what is known as an equitable title to the real estate.   **See** Ladner on Conveyancing in Pennsylvania, § 5:26 (3d ed. 1961)….   [I]f the terms of the agreement are violated by the vendor, the vendee may go into a court of equity seeking to enforce the contract and to compel specific performance.   **Borie v. Satterthwaite**, … 37 A. 102 ([Pa.] 1897); and **Agnew v. Southern Ave. Land Co.**, … 53 A. 752 ([Pa.] 1902).

**Id.** at 770-71.

interest." ***Trowbridge v. McCaigue***, 992 A.2d 199, 201 (Pa. Super. 2010). "A writing required by the Statute of Frauds need only include an adequate description of the property, a recital of the consideration and the signature of the party to be charged [with performing]." ***Id.*** A description of the property will satisfy the Statute of Frauds where it describes a particular piece or tract of land that can be identified, located, or found. ***Phillips v. Swank***, … 13 A. 712 ([Pa.] 1888). "A detailed description is not necessary, where the description shows that a particular tract is within the minds of the contracting parties, and intended to be conveyed." ***Id.*** at … 715. Regarding the signature element, "there is no requirement in the Statute [of Frauds] or the decisional law that a signature be in any particular form. Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it." ***Hessenthaler v. Farzin***, … 564 A.2d 990, 993 ([Pa. Super.] 1989) (holding mailgram which appellants sent to appellees confirming sale of real estate constituted "signed writing" for purposes of Statute of Frauds where appellants identified themselves in mailgram, declared their acceptance, and identified property and consideration involved). Importantly:

> The purpose of the Statute [of Frauds] is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest. Pennsylvania courts have emphasized that the Statute is not designed to prevent the performance or enforcement of oral contracts that in fact were made. Therefore[:]
>
>> [W]e should always be satisfied with some note or memorandum that is adequate … to convince the court that there is no serious possibility of consummating fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail.

***Id.*** at 992-93 (internal citations and quotation marks omitted) (emphasis in original).

***Zuk v. Zuk***, 55 A.3d 102, 107 (Pa. Super. 2012) (emphasis omitted).

- 17 -

Here, Appellant contends that the Statute of Frauds precludes Appellee from establishing an agreement of sale or title to the subject premises. Appellant's Brief at 29. In support of his argument, Appellant declares that "[t]he purported agreement of sale contained an inadequate description of the property[,] and there was no deed executed by the [d]ecedent transferring the property." *Id.*

In response to Appellant's assertions, the trial court opined:

> In all, two documents indicating the agreement of sale for the subject property were offered by [Appellee] to overcome the Statute of Frauds. [Appellee's] Exhibit 1 [("P-1")] is a page from a rent book dated August 7, 1985[,] containing entries logged by her family. The page contains the following language[:] "Received from George Blackmon, six hundred & fifty dollars for down payment on 2023 Wilder Street." The page contains Zack Moore[,] Sr.'s signature. [Appellee's] Exhibit 2 [("P-2")] is a page from a rent book dated May 19, 1986. The page contains the following language[:] "Cash Price $2800 Paid, Received from George Blackmon[,] eighteen hundred twenty-nine dollars & fifty-eight cents for the property 2023 Wilder Street." The page contains Zack Moore[,] Sr.'s signature and a balance of $157.00, which corresponds to the adjoining page, showing a rent balance of $157.42.
>
> The two exhibits are somewhat crude, but they contain a description of the property,[8] the essential terms of the

---

[8] The designation of a property by street and number is sufficient to satisfy the Statute of Frauds where a recorded deed containing the metes and bounds description of the property and indicating the seller's title in the property exists. *Sawert v. Lunt*, 62 A.2d 34 (Pa. 1948). *See also Suchan v. Swope*, 53 A.2d 116, 118 (Pa. 1947) (holding that a description of the subject-matter of the sale as "my farm" on the vendor's receipt for hand-money was sufficient to satisfy the Statute of Frauds where it was clear that the parties knew what was intended by "my farm" and all that was necessary was to refer to the deed by which the vendor acquired title in order to ascertain the metes and

agreement[,] and it is signed by Zack Moore[,] Sr.  This [c]ourt was satisfied that the exhibits overcame the Statute of Frauds. However, the mere removal of the Statute of Frauds does not necessarily compel a finding that a contract was entered into. [Appellee] presented testimony from her children, George Blackmon[, Jr.,] and Betty Collins[,] to support this finding[,] and this [c]ourt found their testimony to be credible.

[George] Blackmon[, Jr.,] testified that he was living in the subject property while attending college in 1985[,] when this agreement was entered into.  He helped his parents with financial issues in the home and was a witness to the transaction.  He provided context about the transactions and discussed his personal knowledge about the relationship his family had with Zack Moore[,] Sr.  Mr. Blackmon was also familiar with Zack Moore[,] Sr.'s signature, as a result of helping his family out with this transaction and other rental transactions.  Betty Collins, [Appellee's] daughter[,] also testified that she was familiar with Zack Moore[,] Sr.[,] and it was her understanding from living in the subject property that it was purchased from Zack Moore[,] Sr. She testified that she saw Zack Moore[,] Sr.[,] sign the rent book. This [c]ourt found their testimony to be credible and ample enough to show that an agreement of sale for the subject property occurred between [Appellee] and Zack Moore[,] Sr….  Appellant provided his own testimony, and that of his sister and mother to rebut [Appellee's] assertion that Zack Moore[,] Sr.'s signature in the rent book is authentic.  This [c]ourt did not find the testimony of … Appellant and his witness[es] credible.

TCO at 13-14 (citations to record omitted).

With regard to Appellant's claim that Appellee failed to satisfy the Statute of Frauds because the writings produced as evidence of the sale agreement did not include a deed, we note that "[a]ppellate arguments which fail to adhere to [the Rules of Appellate Procedure] may be considered waived,

---

bounds for conveyance purposes).  Here, the record contains a copy of the recorded deed which originally conveyed the subject premises to Zack Moore, Sr., on September 15, 1970, and included the metes and bounds description of the property.  **See** Complaint, Exhibit D.

and arguments which are not appropriately developed are waived." **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record[,] and with citations to legal authorities." **In re R.D.**, 44 A.3d 657, 674 (Pa. Super. 2012). "We will not act as counsel and will not develop arguments on behalf of an appellant." **Id.** As Appellant fails to develop his argument and fails to cite to any legal authority in support of his assertion, we deem this claim to be waived. [9]

Additionally, Appellant avers that the documents relied on by the court were not properly authenticated, based on his assertion that "[George]

_____

[9] Even if Appellant had properly preserved this issue, we reiterate that the Statute of Frauds provides that "[a] writing … need only include an adequate description of the property, a recital of the consideration and the signature of the party to be charged [with performing]." **Trowbridge**, **supra**. Furthermore, we note that our Supreme Court has consistently held that "a failure to record documents demonstrating a conveyance is not dispositive of whether the documents effectuated a valid conveyance." **MERSCORP, Inc. v. Delaware County**, 207 A.3d 855, 867 (Pa. 2019) (internal quotation marks and brackets omitted). The purpose of Pennsylvania's land recording statutes is "to protect *subsequent bona fide purchasers* by providing notice of conveyances and any other restrictions on land and guarding against a fraudulent title." **Id.** at 866 (emphasis added) (citing, *inter alia*, **Montgomery County, Pa. v. MERSCORP Inc.**, 795 F.3d 372 (3d. Cir. 2015) (holding that Pennsylvania recording statutes do *not* create a mandatory duty to record every conveyance but, rather provide instructions for "preserv[ing] the property holder's rights as against a subsequent bona fide purchaser"). Thus, the lack of a deed in the present case, where no third-party, bona-fide purchaser or creditor is involved, would not invalidate the conveyance of the property between Appellant and Appellee.

Blackmon[, Jr.,] learned about [Zack] Moore[, Sr.]'s signature in anticipation of litigation[,] which is barred by the Pennsylvania Rules of Evidence…." Appellant's Brief at 29; **see also id.** at 30 (citing Pa.R.E. 901(b)(3) (stating that when there is a question of authenticity, a specimen used for comparison must be authenticated)); **id.** (citing Pa.R.E. 901(b)(2) (indicating that handwriting evidence may be authenticated by "a non[-]expert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation")).

To the contrary, the record reflects that the documents were properly authenticated. "[George] Blackmon[, Jr.,] provided ample testimony to show that he was familiar with Zack Moore[,] Sr.'s signature and that he witnessed Zack Moore[,] Sr.[,] sign the rent[]book and the pages containing the contested agreement of sale." TCO at 15. After re-producing a portion of George Blackmon, Jr.'s testimony regarding his knowledge of the disputed transaction and of Zack Moore, Sr.'s signature, the trial court concluded:

> Mr. Blackmon was clearly discussing an attempt to validate Mr. Moore Sr.'s signature on certain receipts or entries in the rent[]book, not on [P-1 and P-2,] which captured the contested sale of the subject property in this matter. This [c]ourt determined that Mr. Blackmon's testimony about visiting the pension board[10] is confined purely within the context of

---

[10] At trial, George Blackmon, Jr.[,] testified:

> We did an extensive background in terms of validating [Zack Moore, Sr.'s] signature through the pension department[,] through the City of Philadelphia and FOP. I am not a handwriting

validating Mr. Moore[,] Sr.'s signature on certain pages of the rent[]book which are not germane to whether this signature on the agreement of sale is authentic. Mr. Blackmon testified that he was a witness to the agreement of sale and that he saw Mr. Moore[,] Sr.[,] sign it. So did Mr. Blackmon's sister. This [c]ourt found the testimony about his personal knowledge credible. Mr. Blackmon couldn't possibly have acquired this firsthand knowledge in anticipation of litigation in 1986 over thirty years ago unless he is also a wizard or jedi with the ability to see into the future. Since []Appellant conducted no discovery in this case and didn't cross-examine Mr. Blackmon about whether he possesses such an ability, alas, we will never truly know.

*Id.* at 18 (footnote omitted). After careful review, we determine that the record supports the trial court's finding of a valid agreement of sale.

Lastly, Appellant avers that Appellee failed to establish the elements of adverse possession. He asserts that Appellee's use of the subject premises was "in subordination to Mr. Moore, Sr.[,]" that Appellee "resided in the property as if she was a tenant[,]" and that the record is devoid of any evidence of change in the character of Appellee's tenure from permissive to hostile. Appellant's Brief at 30, 32-33. Based on our conclusion that the trial court properly found a valid agreement of sale between the parties, we deem this issue to be moot. However, even if the sale agreement had been invalid, the record clearly belies Appellant's claims.

---

expert, but we did go through the painstaking process of trying to make sure this signature was validated…. We did contact the pension board … to provide us with copies of and signature of Mr. Moore, Sr.[,] so that we could have a handwriting expert from the Philadelphia Police Department to validate the signatures that are here on the receipt and the signatures that are on Mr. Moore[,] Sr.'s retirement papers as it relates to the City of Philadelphia.

TCO at 17 (quoting N.T. Trial, 11/30/17, at 43-44).

"Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law." **Flannery v. Stump**, 786 A.2d 255, 258 (Pa. Super. 2001). "One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title." **Id.** (internal citations omitted). "Where the possession, at its inception, is permissive, … [adverse possession] will not begin to run against the real owner until there has been some subsequent action of disseizin or open disavowal of the true owner's title…." **Id.** at 260 (internal quotation marks, citations, and emphasis omitted).

It is clear that Appellee has established all of the requisite elements of adverse possession in the present matter.[11]  We adopt Appellee's analysis, in relevant part, as follows:

> [Appellee] moved into [the] property in 1973 as a renter.  In 1986, [Appellee] stopped [paying] rent[,] as she believed she purchased [the] property from [Zack] Moore, Sr.  Witness testimony and evidence was presented at trial that [Appellee] paid taxes from 1986 onward….  [Appellee] has kept up with the general maintenance of the property[,] as well as improvement to [the] home.  [Appellee] submitted receipts for roof repair, replaced windows[,] and [the] widening [of] the entrance to accommodate [a] handicap ramp.  Further, [Zack] Moore, Jr.[,] testified that there is no record of Zack Moore[,] Sr.[,] or [his]

---

[11] We note that the trial court provided a thorough alternative analysis in support of a finding of adverse possession, in the event that this Court concluded that the parties did not enter into an agreement of sale.  Because we are satisfied that Appellee met her burden of establishing a valid sale agreement, we need not reproduce the trial court's analysis here.

estate … making any home improvements, paying any property taxes[,] or performing any general maintenance on the property since 1986.

[Appellee's] ownership has been visible and notorious where all reasonable persons were on notice [that] the property was [possessed by her]. There was testimony that [Appellee] and her family had regular family social event[s] and would regularly put up holiday decoration[s]. There was further testimony that [Appellee] and her family were friendly with their neighbors. Additionally, [Appellee] has appeared before [the] court of common pleas to avoid [a] sheriff's sale [of the] property and entered into an agreement to pay [property] taxes.

[Appellee's] possession was distinct and exclusive. [Appellee] testified that she believed that she purchased the property from Zack Moore, Sr.[,] and acted in accordance with th[e] belief that it was her property. [Appellant] testified that he nor his realtor was allowed entry and that [Appellee's] son told him that [Appellee] purchased [the] property.

[Appellee's] possession has been hostile. [Appellee] … asserted her ownership rights adverse to that of [the] true owner and all others. [Appellee] and her husband purchased [the] property from Zack Moore[,] Sr.[,] for $2800. Despite the transfer not being finalized, [Appellee] believed that the property was hers and conducted herself and her activities surrounding the property accordingly.

[Appellee's] possession of the property has been continuous and uninterrupted in excess of the 21-year statutory period. [Appellee] and her family have possessed the property for 31 years.

Appellee's Brief at 5-6 (unpaginated; citations to record omitted).

In response to Appellant's allegation that Appellee's use of the property remained permissive and not hostile, we further expand on the hostile possession element.

When considered as an element of adverse possession, "hostile" is a word of art. "While the word 'hostile' has been held not to mean ill will or hostility, it does imply the intent to hold title against the record title holder." Possession may be hostile even

- 24 -

though the claimant knows of no other claim. 1 P.L.E. Adverse Possession § 41, 433-34.

**Schlagel v. Lombardi**, 486 A.2d 491, 494 (Pa. Super. 1984).[12] In **Schlagel**, this Court stated that "[t]he fact that [the] appellant was under the false impression that he owned the land does not automatically mean that his possession was not 'hostile.'" **Id.** This Court explained:

> It is true that some jurisdictions hold that the possessor's mistaken belief in his ownership negatives the existence of a necessary hostile intent…. These jurisdictions identify hostility with the common-law tort of disseizin, i.e., forcible ouster. The theory is that one who does not know he is in possession of another's land cannot harbor the specific intent to oust the other out of his land. But most jurisdictions deem the animus of the possessor irrelevant. Rather, they look to the actual physical facts of the possession to determine if such circumstances of notoriety exist so that the true owner is put on notice. They represent a belief that the nature of the possession alone is what is important and that a sufficiently notorious possession will always be enough to alert the owner. Therefore, the

_____

[12] We further note:

> Hostile possession, for purposes of an adverse possession claim, does not connote or require ill will, malevolence, animosity, or enmity but rather is an assertion of ownership adverse to that of the true owner. Hostility of possession means that one in possession of land claims the exclusive right to that land or occupies it as its owner. Such possession thus imports that the claimant is in possession as owner, in contradistinction to holding in recognition of or subordination to the true owner. Possession is hostile if the possessor holds and claims the property as his or her own, whether by mistake or willfully.

3 Am.Jur.2d Adverse Possession § 40.

> hostility is implied if all other elements have been established.
>
> Pennsylvania follows the majority view. *See*, *e.g.*, *Dimura v. Williams*, … 286 A.2d 370 ([Pa.] 1972); *Adams v. Tamaqua Underwear Co.*, … 161 A. 416 ([Pa. Super.] 1932).
>
> *Lyons v. Andrews*, … 313 A.2d 313, 316-17 ([Pa. Super.] 1973). *See also Burns v. Mitchell*, … 381 A.2d 487 ([Pa. Super.] 1977).

*Schlagel*, 486 A.2d at 494 (internal citations omitted). Based on the foregoing analysis of relevant case law, the *Schlagel* Court held that "it was error for the lower court to deny [the] appellants' adverse possession claim on the basis that their mistaken belief in their ownership negated the existence of the necessary hostile intent." *Id.*

Similarly, in the instant matter, Appellee's belief that she owned the subject premises would not negate the existence of the requisite hostile intent. The record clearly establishes sufficiently notorious possession to put Appellant on notice of Appellee's physical possession of the property. Having proven all of the other elements of adverse possession, hostility is implied. *See Flannery*, 786 A.2d at 258 (noting that "our [S]upreme [C]ourt has stated that hostility may be implied where all of the remaining elements of adverse possession have been established and where there is no evidence tending to prove or disprove hostility") (citing *Myers v. Beam*, 713 A.2d 61, 62 (Pa. 1998)). Thus, if the sale agreement were invalid, we would discern no abuse of discretion or error of law in the trial court's granting of Appellee's adverse possession claim.

Accordingly, we affirm the judgment entered on September 5, 2018 in favor of Appellee.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/20